FILED

Dec  3  2 34 PM '03

U.S. DISTRICT COURT
NEW HAVEN, CONN.

**ORIGINAL**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **LEIGH BOLICK** | : | **Civil Action No. 3:03CV165 (PCD)** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **ALEA GROUP HOLDINGS, LTD,** | : | |
| **et al.** | : | |
| **Defendants.** | : | **November 18, 2003** |

### DEFENDANTS' OBJECTION TO
### PLAINTIFF'S MOTION TO COMPEL

The Defendants, Alea Groups Holdings, Ltd., Alea North America Company ("ANAC"), and Robert D. Byler ("Byler")(or, hereinafter, collectively, "Defendants"), hereby respectfully submit their Objection to the Motion submitted by the Plaintiff, Leigh Bolick ("Bolick"), to compel responses to Plaintiff's Interrogatories and Request for Production and to produce certain documents identified in Defendants' Privilege Log.

### BACKGROUND

This action involves claims for alleged sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, and comparable Connecticut law. Common law claims for breach of contract, misrepresentation and the like, have also been brought. Bolick essentially alleges that her former superior, individual Defendant, John Bennett, engaged in conduct purportedly constituting actionable, sexual harassment by, among other things, putting his arm

around her seat on an airplane; speaking too closely to her; asking her to "work out" with him on business trips in hotel gyms; and generally having inappropriate conversations containing innuendo about drugs and sexual behavior. Bolick also alleges that the other Defendants retaliated against her by reducing her job responsibilities after her internal complaints about Mr. Bennett. Finally, Bolick claims differential compensation based on her gender in violation of the Equal Pay Act.

## DISCOVERY PERTINENT TO MOTION

Discovery in this action commenced in the first week of April, 2003. Bolick did not request document production or other written discovery until on or about July 18, 2003. The Defendants complied with such requests on September 18, 2003.[1] More than one month later, on October 26, counsel for Bolick set out her position regarding Defendant's objections to her discovery requests. Counsel for Defendants promptly responded, in turn, on October 30, and Bolick filed her Motion to Compel the following day[2].

These Defendants have produced more than 800 pages of documents in this case. Among the documents produced were investigative notes and memoranda of the Director of Human Resources and Defendant Byler relative to Plaintiff's internal complaints to ANAC personnel; Ms. Bolick's personnel file; documents reflecting Plaintiff's compensation and benefits; offer letters extended to Vice Presidents hired in 2002 which Bolick claims are relevant to her Equal

---

[1] Defendants requested an extension of time for compliance. Plaintiff consented to this request.
[2] At that time, October 31 was the final day for completion of fact discovery. Thereafter, the Court extended the deadline for completion of fact discovery to December 31, 2003.

Pay Act and retaliation claims (i.e., reflecting their salary and fringe benefits); numerous e-mail communications between the parties pertinent to Bolick's claims and defenses asserted; and a number of other documents sufficient to establish events concerning and reflecting Bolick's internal complaints, the changes in her job responsibilities, her medical leave of absence, and the circumstances surrounding Defendant Bennett's departure from the company. The Plaintiff has taken the depositions of the former ANAC Vice President and Director of Human Resources, Marti Lametta; ANAC CEO Robert Byler; John Bennett; and ANAC President Leonard Goldberg. In such a way, she has also been able to glean significant information pertinent to her claims and the asserted defenses, including a wealth of information encompassing that information she seeks by virtue of her Motion to Compel.

Nevertheless, <u>without proffering one, single citation to judicial precedent</u>, Plaintiff asserts the following information previously subject to objection should be compelled here. For those reasons set forth in detail herein, the Defendants respectfully request that Plaintiff's Motion to Compel be denied in all respects.

## ARGUMENT

### Interrogatory Number 5:  The terms of John Bennett's separation agreement, including the amount of compensation received.

Plaintiff has already learned through the production of documents, as well as by virtue of detailed deposition testimony of defense witnesses Robert Byler, Marti Lametta, and John Bennett, of the detailed circumstances surrounding Mr. Bennett's departure from the company; the fact that he was offered and accepted a severance package, which included a release of

claims in exchange for an unspecified amount of salary continuation; and the effective date of such departure. It has further been confirmed that Mr. Bennett was thereby permitted to resign.

Plaintiff insists that she is entitled to also learn of the specific monetary amounts set forth in the severance package. The bases provided in her Motion are that she believes the dollar amount of severance paid in exchange for the release and other provisions of the agreement will be probative of "consciousness of guilt" and potential motive for the company to have retaliated against her while, at the same time, failing to proffer one citation in support of her contention that these bases should outweigh the serious considerations weighing in favor of nondisclosure. However, as set forth herein, it has been well established that under circumstances such as these, the Defendants are entitled to keep confidential specific terms of the severance agreement executed by Mr. Bennett.

Initially, it bears repeating that Mr. Bennett and ANAC executives have already testified that Bennett was paid by ANAC in exchange for a release of claims, if any, he may have had against the company. There are many reasons why employers offer such agreements, the least of which has nothing to do with "consciousness of guilt", but more to do with avoiding potential litigation in the future. See, e.g., Hasbrouck v. BankAmerica Housing Services, 187 F.R.D. 453 (N.D.N.Y. 1999)(discovery of settlement agreement in employment discrimination case denied; court emphasized public interest in encouraging settlements and promoting efficient resolution of conflicts outweighed any interest in providing litigants broad discovery of facts to support claims and defenses); Etter v. Advest, Inc., 2002 Conn. Super. Lexis 3478 (2002)(discovery of

ST:27060v1                                    4

severance offers in discrimination claim denied as such disclosure would violate the "settlement" privilege. Court emphasized federal case law; e.g., <u>Pierce v. Tripler & Co.</u>, 955 F.2d 820 (2d Cir. 1992)). Critically important, employers should be encouraged to resolve potential litigation through private agreements, and for this reason in particular, it is the very philosophy behind Federal Rule of Evidence ("Fed. R. Evid.") 408 which protects the confidentiality and admissibility at trial of such information. Simply stated, courts have long recognized that if employers need to be concerned that the negotiated severance amounts can be used against them in related or unrelated litigation, the entire goal of the rule will be defeated—i.e., to encourage private settlements.

More specifically, Fed. R. Evid. 408 provides that a settlement agreement or offer of a settlement "is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible." The exclusion from disclosure of the details of compromise efforts "is based on the strong public policy favoring negotiated resolution of disputes. Since parties may be inhibited in making offers of compromise by the fear that such information will be used against them if the compromise efforts fail, the law alleviates that fear and encourages the making of offers of compromise by making these privileged." <u>Duse v. International Business Machines Corporation</u>, 748 F. Supp. 2d 956 (D. Conn. 1990), citing Wright & Graham, <u>Federal Practice & Procedure: Evidence:</u> § 5302. <u>See</u> <u>Cook v. Yellow Freight System, Inc.</u>, 132 F.R.D. 548, 554-55 (E.D. Cal. 1990)(denying motion in sex harassment case to compel production of documents containing

information about confidential settlement discussions). While the rule's prohibition against the admissibility of settlement agreements and offers is not absolute when the evidence is offered for other purposes, such as proving bias or prejudice of a witness; see Fed. R. Evid. 408; Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 510 (2d Cir. 1989); Plaintiff here has not proffered any specific, valid reason why this information would prove bias by Mr. Bennett or ANAC. On the contrary, in mere conclusory fashion, she states the information can prove "bias" and makes a confusing reference to "consciousness of guilt"—without explaining whose guilt she believes is being demonstrated. Bottaro v. Hatton Associates. 96 F.R.D. 158, 160 (S.D.N.Y. 1982)(denying motion to compel production of settlement agreement); United States v. Contra Costa County Water District, 678 F.2d 90, 92 (9th Cir. 1982) (finding that one consideration in precluding the discovery of documents generated in the course of settlement discussions lies in the fact that such discussions are frequently not the product of truth seeking.  Settlement negotiations are typically punctuated with numerous instances of puffing and posturing since they are "motivated by a desire for peace rather than from a concession of the merits of the claim."); Wyatt v. Security Inn Food & Beverage, Inc., 819 F.2d 69, 71 (4th Cir. 1987)(finding that what is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise actually contend to be wholly true.  The discovery of these sort of "facts" would be highly misleading if allowed to be used for purposes other than settlement). See also Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc., 332 F.3d 976 (6th Cir.

2003)(court emphasized traditional notions of confidentiality and recognized a newly developed "settlement privilege" which shields communications in furtherance of settlement).

For these reasons, Mr. Bennett's severance agreement would presumably be deemed inadmissible to prove fault, liability, or "consciousness of guilt". Yet, Bolick seeks disclosure of the monetary amount paid for that very reason. At the same time, Bolick completely fails to set forth in any detail why this information would nevertheless be admissible at trial, or why it would lead to the discovery of any evidence that would be admissible.

In any event, even if this Court deems this information to be discoverable as potentially admissible or leading to the discovery of admissible evidence, the information should nevertheless be deemed precluded by application of Fed. R. Evid. 403. This Rule provides that evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Clearly, any perceived probative value of the monetary terms of the subject severance agreement is substantially outweighed by the danger of unfair prejudice to the Defendants herein.

Plaintiff has already advised this Court that she intends to take the monetary amount paid to Mr. Bennett in exchange for his release of claims, and argue that it indicates "consciousness of guilt" or "bias", the exact type of inference Rules 403 and 408 are designed to prevent. If she deems the amount paid to be "high", she will clearly not focus on Mr. Bennett's high salary level, or any other considerations which Defendants may have discussed in establishing the

amount, but rather, will suggest that he was "paid for testimony". If the amount paid is perceived by her to be "low", she has clearly indicated she will argue that the amount signifies that ANAC deemed Mr. Bennett "guilty" of harassing behavior. Bluntly put, this information lacks any probative value whatsoever, yet Bolick would be able to cast a negative light on that information irrespective of the dollar amount. Moreover, to prevent this legal quagmire which would result in prejudice to the Defendants, the Court would need to conduct a "mini-trial" to establish all the factors which went into the amount offered and accepted with additional witnesses, and potentially with additional documents. In short, the Defendants should not be placed in such a compromised position with the jury. As a further consequence, the Court's message to employers will be that employers should be wary of settling with targets of harassment investigations when they depart the company, as the amount which is agreed upon can be used against that Company in litigation by the complainant.

Finally, as previously indicated, Plaintiff argues that the amount paid to Mr. Bennett by virtue of the severance agreement would be probative of a motive for ANAC to retaliate against her. More simply stated, Bolick wishes to prove that if the company paid a "significant" amount of money, it would then have a motive to be angry with her for having raised her complaints. Here again, Defendants would be forced to engage in a "mini-trial" to explain why payment to Bennett was made, as well as to explain the considerations for the offered amount. Nevertheless, neither Fed. R. Evid. 408 nor Fed. R. Evid. 403 provides any exception to the general rule of nondisclosure that would permit the admissibility of settlement agreements to prove motive of

"retaliation" for any actions by these Defendants.  In sum, then, it is respectfully submitted that the Motion to Compel this information be denied.

### Request for Production Number 9:  John Bennett's personnel file.

Plaintiff insists, despite the Defendants' representation that no documents contained in Mr. Bennett's personnel file reflect the events at issue in this action, that Defendants produce the file in its entirety.  The primary basis for her insistence on this information is the contention that she is entitled to know Mr. Bennett's salary and qualifications, and whether he has ever been reprimanded for "any conduct toward women at" ANAC.

However, Defendants maintain Mr. Bennett's salary and qualifications are not relevant, because, at the time Plaintiff sought the Senior Vice President position, that position no longer existed in Bolick's group.  Critically important, Bolick has not produced any evidence to contradict the sworn testimony of defense witnesses in this regard.  In any event, witnesses have already been deposed, including Mr. Bennett himself, who provided information regarding his background.

An employee's personnel file, protected initially by Conn. Gen. Stat. § 31-128, contains a wealth of very personal information about that employee.  Consequently, the legislature has already opined that such information deserves a high standard of protection.  At the same time, Fed. R. Evid. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Given Bolick's sole proffered reason for

ST:27060v1                                        9

insistence on overcoming the policy behind the statutory protection of this type of file is her claim of entitlement to a position that did not exist in her group at the point in time she claims she should have been placed into that position, this Court should continue to protect the contents of Mr. Bennett's personnel file. Mr. Bennett's benefit information, resume on hire, and related fringe benefit information have no bearing whatsoever on any of Bolick's claims, nor does this information have the tendency to make the existence of any fact more or less probable.

Again, contrary to her unsupportable contentions, Bolick has already been advised that no documents contained in Mr. Bennett's personnel file reflect her complaint, the investigation, any "warnings" or counseling given to him, any "conduct toward women" or even reflecting management's view of his performance. Bolick has also elicited sworn testimony from several witnesses about these very issue, including former ANAC Human Resource Director and Vice President Marti Lametta. Such testimony included statements that no other inappropriate "conduct toward women" was the subject of any formal or informal complaint, or was otherwise known to Ms. Lametta. Mr. Byler testified to the same lack of knowledge. Given these undisputed facts, Bolick should not be permitted to view highly confidential and personal information initially protected by statute, even with a confidentiality stipulation.

**Request for Production Number 10: Salary information for all employees of ANAC above Assistant Vice President, excluding names.**

In her Complaint and during her deposition, Plaintiff claimed that she should have been paid a higher salary in the ANAC Marketing Department Vice President position, commensurate

with salaries paid to other Marketing Department Vice Presidents hired in 2002; that she and the other female Vice President of the ANAC Marketing Department, during 2002, were paid less than male ANAC Vice Presidents in that Department based on their gender; and further, that she was eligible to be promoted to the ANAC Marketing Department Senior Vice President position (John Bennett's position prior to his departure), even though that position did not exist in her group during the pertinent time period—i.e., mid-2002 to September 2002. She has not, in her Complaint nor during her deposition, articulated any claim that she should have been promoted to any other position in the company. Plaintiff similarly has not claimed discrimination at "all levels" within ANAC based on gender. Again, her Complaint and deposition testimony have focused exclusively on hiring the Marketing Department of which she was a part, and during her tenure at ANAC.

Consequently, her request for salary information for <u>all</u> employees of <u>all</u> departments of ANAC above the level of assistant Vice President should be deemed irrelevant and not discoverable. Indeed, as previously emphasized, Defendants have already divulged salary information for the Vice Presidents in the Marketing Department during the time period made relevant by her complaint--2002. Thus, Defendants maintain that the probative value of the information sought is outweighed by the interests of confidentiality of that information, again as codified by Conn. Gen. Stat. § 31-128.

Additionally, despite her suggestion in the Motion to Compel, Bolick has not pursued a claim that females were paid less than males "at all levels." Rather, she has alleged that she was

paid less than males at the Vice President level in 2002 on account of her gender. Therefore, the relevant comparative group for purposes of Bolick's gender discrimination claim should be the salary information of the Vice Presidents in the Marketing Department of which she was a part, at the time she claims she should have been paid more—2002. Again, this information has already been provided to Plaintiff.

To be successful in her claims of gender discrimination and in her asserted Equal Pay Act claim, Bolick must demonstrate that <u>similarly situated persons</u> were treated differently than she was treated. See <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 258 (1981)(citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 804 (1973)(standards applicable to discrimination cases); <u>Fayson v. Kaleida Health, Inc.</u>, 2002 U.S. Dist. LEXIS 18591 (W.D.N.Y. 2002(standards used in Equal Pay Act cases similar to standards in Title VII cases—question is whether employer harbored discriminatory intent against her and whether she was similarly situated). Bolick has not even alleged that she was "similarly situated" to any or all persons above the level of assistant Vice President. For example, in <u>Balderston v. Fairbanks Morse Engine Division of Coltec Industries</u>, No. 01-1166 (7th Cir. 04/17/2003)[3], plaintiffs sought company-wide personnel information "on any present or former employees at the supervisor level or above," and personnel records of all employees in the parts department who were laid off, terminated, or retired between 1989 and 1998. The Magistrate Judge to whom the discovery issue was assigned limited the scope of plaintiffs' discovery request to "similarly situated"

---

[3] Copy attached for this Court's convenience.

employees, and the District Court agreed. The court noted that when requesting discovery in an employment discrimination suit, the "other employees' circumstances [must be] close enough to [plaintiff]'s to make comparisons productive." Id., quoting Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994). In Balderston, the District Court limited discovery to the relevant corporate department, to similarly situated employees in that department, to a specified time period, and to pertinent decision-makers. Id. In this instance, a similar limitation should be applied, and Bolick cites to no legal authority for the Court to do otherwise. See also In Re: Western District Xerox Litigation, 140 F.R.D. 264 (W.D.N.Y. 1991)(court has wide discretion in balancing the needs and rights of plaintiff and defendant during discovery process. Plaintiff in employment discrimination case restricted from overbroad, corporate-wide discovery and restricted to her unit and similarly-situated employees); Obiajulu v. City of Rochester, 166 F.R.D. 293 (W.D.N.Y. 1996)(despite broad discovery permitted in Title VII cases, there are appropriate limits that may be imposed to balance parties' rights and needs; discovery in this type of case can be limited to employment units, departments and sections in which employees similarly situated to plaintiff are employed).

**Request for Production Number 11: Minutes of Board meetings wherein the issue of payment of a bonus for the year 2001 was discussed.**

Bolick claims breach of express and implied contract in connection with ANAC's decision not to pay her a bonus for calendar year 2001. Critically important, however, no ANAC employee was paid a bonus for that year based on company performance. In this regard as well,

Defendants have produced the communication issued to employees of this decision, and has elicited voluminous sworn testimony of this fact and the reasons for the company's decision. Bolick also has been furnished with a copy of her offer letter wherein it is specifically indicated that such bonuses were discretionary.

Apparently not satisfied with this information, but yet again failing to present any contrary information, Bolick requested minutes of Board meetings wherein the topic of 2001 bonuses was discussed. Bolick has already been advised responsive documents simply do not exist. Defendants clearly cannot produce what does not exist. <u>See</u>, <u>e.g.</u>, <u>Topo v. Dhir</u>, 210 F.R.D. 76 (S.D.N.Y. 2002)(courts have broad discretion to limit or bar discovery, even with relevant matters).

**<u>Request for Production Number 13: Personnel files of plaintiff's peers in the Marketing Department (Vice Presidents).</u>**

The Defendants have already provided sworn testimony as to the qualifications of the Vice Presidents hired in 2002. They have further indicated their willingness to produce resumes and any other documents (if they exist) reflecting the qualifications of the three, subject Vice Presidents of the Marketing Department upon hire. Nevertheless, Plaintiff insists on reviewing their entire personnel files.

Defendants contend that these employees' personnel files, again protected by statute, should not be deemed probative of any of Plaintiff's claims—at least not sufficiently probative to outweigh these employees' privacy considerations. Bolick provides no legal support for her

ST:27060v1                                    14

argument that the personnel files of the Vice Presidents are relevant to her gender discrimination or equal pay act claims. Moreover, to bolster her argument that production should be compelled, Defendants have already provided Bolick with the offer letters issued to these individuals reflecting the compensation packages made to them upon hire, so she can compare that offered compensation to her compensation upon her promotion to the Vice President position. Defendants have further already provided sworn testimony regarding the subject qualifications at the hiring stage, and have offered to supplement that production with the Vice Presidents' resumes and any other documents, to the extent they exist, that specifically reflect the qualifications of these employees upon hire. The performance of these employees post hire, whether positive or negative, or any other information contained in their personnel files, should not be deemed sufficiently probative to overcome the sensitive and confidential nature of that information. See Fed. R. Evid. 401. Defendants' decision-making at the time it hired these employees is what is alleged by Bolick to have been discriminatorily motivated.

**Request to Produce Number 18: Organization chart setting forth the corporate organization and reporting relationships of and between Alea Group and ANAC. If no such chart exists, documents from which plaintiff could glean that information.**

Defendants have now located a responsive document and will produce that document simultaneously with service of this Opposition.

This Court should not compel the Defendants to undertake the burdensome task of providing additional documents which substantiate the content of this chart as Plaintiff may further require, especially in view of the wealth of information already provided. Robertson v. Chamberlain,

622 F.2d 34 (2d Cir. 1980)(protection against unnecessary discovery within the discretion of the court); National Organization for Woman v. Sperry Rand Corp., 88 F.R.D. 272, 277 (D. Conn. 1980)(the management of discovery is within sound discretion of the court; defendant entitled to protection from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas. "Discovery is not to be used as a weapon…".).

**Request for Production Number 24: Copies of documents relied upon by defendant ANAC in refusing to pay bonuses for the year 2001.**

As previously set forth herein, the Defendants contend that sufficient information concerning the reasons why bonuses were not paid to employees of ANAC in 2001 has already been provided, along with extensive testimony on this issue. The breadth of Bolick's request potentially encompasses each and every document reflecting revenue generation and company performance. Furthermore, as no ANAC employee was paid a bonus for 2001, Bolick should not be entitled to argue the wisdom of the company's decision not to pay a bonus or its policy in that regard. It is simply not relevant. Accordingly, this Court is respectfully requested to apply the principles previously discussed herein and refuse to compel production of such additional information.

### Privilege Log—Item Number 1

Noteworthy first, Bolick's counsel has never asked for clarification of the contents of Defendant's Privilege Log, despite her suggestion to the contrary in the supporting Affidavit.

Thus, Defendants have <u>never refused</u> to provide additional information to support the contents of that Privilege Log. See Fed. R. Civ. P. 37(a)(2).

In any event, Defendants maintain, and testimony of the authors of the subject notes with redacted content <u>have already stated under oath</u> at depositions, that the redacted portions (which comprise possibly <u>three paragraphs</u> of information out of nearly one hundred pages of notes and related documents) reflect communications between that author and outside counsel.  What Bolick is claiming is the basis for compelled production, despite that sworn testimony, is not a proffer of legal precedent or authority therefor, but simply that she is "unclear" about the basis for the privilege.  Nevertheless, any unsupported suspicion about the veracity of the witnesses' testimony or her claimed lack of clarity should not lead the Court to compel production of privileged communications.   Indeed, this clarity could easily have been provided with an advance telephone call to Defendants' counsel.

In sum, then, Defendants have sustained their burden of proving the propriety of imposing this privilege, and Plaintiff should not be permitted to invade that privilege by merely stating a perceived doubt about the applicability of that privilege.  <u>Upjohn Co. v. U.S.</u>, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L. Ed.2d 584 (1981)(the privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice."); <u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 441-42 (S.D.N.Y. 1995)(privilege attaches not only to communications by the client to attorney, but also to advice rendered by attorney to the client).

ST:27060v1

17

## Privilege Log – Item Number 2

Similarly here, Bolick cites to no legal authority or judicial precedent to support her claim that the various email communications between the Director and Vice President of the Human Resource Department and Michael R. Halsband, Esquire, Senior Vice President and General Counsel of ANAC, spanning dates between September 2002 through in or about or about December of 2002, concerning Plaintiff's request for FMLA qualified leave, are not privileged. These email communications were the direct result of consultation between Attorney Halsband as the company's attorney and the former Vice President and Director of Human Resources concerning subject matters within the purview of this litigation. Surles v. Air France, 50 Fed. R. Serv. 3d 983 (S.D.N.Y. 2001)(former company employees protected by attorney/client privilege if they are focused on exploring what that former employee knows as a result of his/her former employment about circumstances giving rise to a lawsuit); Upjohn, 449 U.S. at 403. Again, the Motion to Compel this information is the first instance in which Bolick has disputed the applicability of the attorney/client privilege to these communications. Bolick has never conferred with Defendants about her need for clarity as to the assertion of privilege and, as a result, Defendants have never "refused" to provide clarification. Nevertheless, as Bolick has proffered no evidence to contradict the Defendants' representations as to these communications, she should not be permitted to invade the clearly established privilege.

## Privilege Log Number 9

The typed chronology prepared by Martin Larnetta (former Vice President and Director of Human Resources) at the request of outside counsel and for use by outside counsel falls clearly within the attorney/client communication privilege and/or work product doctrine, and therefore, should be deemed exempt from disclosure. See Fed. R. Civ. P. 26(b)(5). The document was created to assist in the defense of Bolick's claims. It bears repeating yet again that Bolick never before asked for clarification of the reason that this document was being withheld, and even now fails to provide any basis for her claim the privilege does not apply. See cases cited, *supra*.

## CONCLUSION

The Plaintiff has failed to sustain any of her arguments regarding why discovery of the identified items should be compelled. Accordingly, for the foregoing reasons, the Defendants respectfully request that Plaintiff's Motion to Compel be denied in all respects.

> **THE DEFENDANTS,**
> **ALEA GROUP HOLDINGS, LTD.,**
> **ALEA NORTH AMERICA COMPANY, AND**
> **ROBERT D. BYLER**
>
>
> By:_____
> Mary A. Gambardella
> Federal Bar No. #ct05386
> Epstein Becker & Green, P.C.
> One Landmark Square, Suite 1800
> Stamford, CT 06901-2601
> (203) 348-3737
>
> and
>
> Barry Asen
> Federal Bar #ct24527
> Counsel Pro Hac Vice
> Epstein Becker & Green, P.C.
> 250 Park Avenue
> New York, New York 10177
> (212) 351-4500

ST:27060v1

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was sent via overnight mail delivery, postage prepaid, this 18th day of November, 2003 to counsel of record as follows:

Barbara Gardner, Esq.
843 Main Street
Suite 1-4
Manchester, CT  06040
*Counsel for the Plaintiff*

Peter E. Gillespie, Esq.
46 Riverside Avenue
P.O. Box 3416
Westport, CT 06880
*Counsel for Defendant John Bennett*

David L. Weissman, Esq.
Saundra M. Yaklin, Esq.
ReedSmith LLP
599 Lexington Avenue, 29th FL.
New York, NY 10022
*Counsel Pro Hac Vice for Defendant John Bennett*

_____
Mary A. Gambardella

ST:27060v1                   21