United States District Court
District of Connecticut
FILED AT        NEW HAVEN

12/15/03                    20
Kevin F. Rowe, Clerk

By:
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

LEIGH BOLICK,                    :        Civil Action No. 3:03CV165 (PCD)
                                 :
            **Plaintiff,**       :
                                 :
vs.                              :
                                 :
ALEA GROUP HOLDINGS, LTD,        :
et al.                           :
            **Defendants.**      :        **DECEMBER 4, 2003**

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT AND REQUEST FOR SANCTIONS

PLEASE TAKE NOTICE THAT the Defendants, Alea Group Holdings, Ltd.("AGH"),

Alea North America Company ("ANAC"), and Robert D. Byler ("Byler"), hereby respectfully

submit their Memorandum of Law in opposition to the Plaintiff's Motion for Leave to Amend

the Complaint to add four additional causes of action. Specifically, based on those reasons set

forth below, these Defendants assert that the grant of leave is unwarranted based on Plaintiff's

inexcusable delay, the failure to establish the requisite "good cause", the demonstrated bad faith,

and the egregious prejudice that will result to all Defendants herein.

Moreover, based on Plaintiff's inexplicable, intentional, and bad faith delay in attempting

to raise these new claims approximately one month before the close of discovery (already twice

extended at Plaintiff's request), it is further asserted that sanctions by way of an award of fees

and costs to Defendants in having to oppose the Motion are warranted.

The bases for this objection and request for sanctions are as follows:

1.    Discovery in this action commenced in the first week of April, 2003, more than seven months ago.   ***The discovery plan "so ordered" by the Court provides that any amendments to the Complaint must have been filed by May 15, 2003***.    Indeed, the Plaintiff already amended her complaint in early April to add one additional cause of action.

2.    The Plaintiff opted to wait until July 19, 2003 to serve <u>any</u> written discovery requests.  These Defendants complied with Plaintiff's discovery requests on September 18, 2003.[1]  Accordingly, the documents to which Plaintiff refers in the Motion to Amend as providing a basis for one of the proposed amendments has been in her possession since that compliance date.  Plaintiff has sought to act on purported "new information" yet fails to specify the nature of that information.  Bluntly stated, it is clear by a reading of the remainder of her motion that, in fact, no new information has been discovered and the same operative facts are involved.  Nevertheless, even any "new information" was indeed revealed and made any part of this Motion, Plaintiff proffers to justification for waiting an additional two-plus months to act upon it.

3.    On September 5, 2003, a settlement conference was held before a Parajudicial Officer.  The matter was not settled, but during that conference, deadlines for the completion of fact and expert discovery <u>were re-set by agreement of the parties</u>.  Indeed, the deadline of

---

[1] Defendants requested an extension of time for compliance.  Plaintiff consented to this request.

October 31, a ten day extension from the then current deadline, <u>was requested by counsel for Plaintiff</u>.

4.      By September 5, 2003, <u>Plaintiff had noticed and conducted only one deposition</u> in July.   Realizing that the newly set deadline was rapidly approaching, on September 9, 2003 Plaintiff was urged by Defendants to forward her list of intended additional deponents.   Despite several inquiries by the undersigned, it was not until September 23 that a list of intended deponents was received, and not until September 30 that depositions were actually noticed.  Nevertheless, Defendants agreed to "squeeze in" five additional depositions between September 24 and October 31 (four defense witnesses and one deposition of Plaintiff's former, treating psychologist).

5.      Plaintiff then moved for a <u>second</u> extension of time to complete fact discovery through December 31, 2003.   During protracted discussions between counsel concerning this request and accompanying motion practice, Plaintiff's counsel never once even mentioned the possibility of attempting to amend the complaint to add **four** (or any) new causes of action.

6.      Plaintiff subsequently moved for <u>another</u> extension of time in connection with <u>expert</u> witness discovery so that two of her four identified expert witnesses could be deposed in December, as these experts could not be made available by November 30.   Again, during protracted discussions concerning their availability, never once did Plaintiff mention the possibility of seeking to amend her complaint.

3

7.    The parties scheduled the deposition of Dennis Purkiss, a London resident, for December 10 in New York. Mr. Purkiss agreed to be deposed in New York rather than in London, despite that the Defendants could have insisted that Plaintiff depose him in London. Never once during the discussions over scheduling of this deposition did Plaintiff's counsel even mention amending the complaint. Mr. Purkiss cleared his scheduled to prepare for and attend that deposition, and may not be available in the United States again in the near future. This was the only pending deposition scheduled by Plaintiff.[2] The depositions of the remaining two of Plaintiff's expert witnesses has been scheduled by Defendants. However, the two experts who have already been deposed were the Plaintiff's mental health treaters, and thus, the completed depositions are the ones which will be directly impacted by the addition of the count for intentional infliction of emotional distress.

8.    As previously noted, the Plaintiff has been in possession of Defendants' responsive documents since September 19, more than two months ago. More than a full month later, Plaintiff's counsel addressed Defendants' outstanding objections to document requests for the first time. Some objections were compromised, resulting in supplemental production, and some were not. Those objections not resolved are the subject of a pending Motion to Compel and Opposition. Likewise, during these discussions, not once did Plaintiff mention the possibility of amending the complaint.

---

[2] With the exception of one deposition Plaintiff noticed of a witness already deposed in this case, without seeking prior leave of this Court, in violation of Fed. R. Civ. Proc. 30(a)(2)(B).

9.      During his deposition on October 20, Defendant Bennett testified that Bolick had directly contacted him. It was claimed that during their conversation, Bolick told Bennett that if he did not execute an Affidavit supporting some of her material allegations, the allegations would then somehow become known to his "wife and employers". Moreover, during the past several months, based on discovery taken, Bennett has insisted that he be deleted as a named party from the one remaining claim against him (the only other count against him was dismissed by this Court in ruling on Defendant's Motion to Dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6)). Clearly, by seeking to add a cause of action for negligent retention and supervision of Defendant Bennett by ANAC, Plaintiff has proceeded to act on her threat of ensuring Bennett's past and potentially current employers know of her allegations against him.

10.      On November 24, 2003, immediately following the deposition of Plaintiff's treating psychologist, the undersigned discussed with Plaintiff's counsel the possibility that Defendants' expert would require an additional 12 days to complete his report as the second part of the examination could not be scheduled prior to December 4 (due to the parties' mutual scheduling issues). Not once during this discussion did Plaintiff's counsel mention she had just put into the mail the proposed amended complaint, knowing that the Defendants would be filing the appropriate motion to obtain the additional time.

11.      Rather, it was not until November 25, 2003, via e-mail, that Plaintiff's counsel wrote to the undersigned with a seemingly innocuous lead-in about a few "other issues", one being a question as to whether Defendants intended to object to the Amended Complaint which

5

she claimed "should have been received".  On the contrary, no Defendant had received this pleading until November 26.  In fact, counsel for Bennett did not receive the proposed Amended Complaint until Monday, December 1.

12.    These Defendants framed their entire discovery strategy—written discovery requests, scope of questioning of Plaintiff, preparation of witnesses, and cross-examination of witnesses--on the claims in the complaint.  Defendant Bennett, in that he was previously a named party to one remaining count, likewise made significant strategic decisions as to the level and extent of participation in discovery, cross-examination of witnesses, and waiver of his right to be present at certain depositions and to participate in expert discovery, based on the single, remaining claim against him.[3]  Defendant Bennett opted to file a Motion pursuant to Federal Rule 12(b)(6) early in the case based on his having been named in only two counts, as opposed to considering the option of waiting for the summary judgment stage had he been named as a party to more counts.

13.    Additionally, with respect to summary judgment, the Defendants have already been formulating arguments to be raised in a motion for summary judgment, which is currently due January 23, 2004.  In this regard as well, deposition questions were carefully prepared to

---

[3] One example is Bennett's decision not to attend the deposition of Plaintiff's retained expert psychiatrist, based on the fact that emotional distress claimed by Plaintiff was an element of damages only, and not an element of a case in chief on any cause of action.  If the amendment is granted, the tort of intentional infliction of emotional distress will be part of the liability issue of Defendants, including Bennett individually, and not just damages.  Another example is Bennett's decision not to participate in the selection of a retained expert by the other Defendants or in discussing the scope of examination by that expert.

6

elicit information to make these arguments in a summary judgment motion. However, with these additional four claims, summary judgment can obviously not be filed by January 23, 2004. Discovery will need to be re-opened and the summary judgment deadline extended as well.

14.    In her Motion for Leave to Amend, Plaintiff concedes "no new facts" have been added to support the four new causes of action, and fails to proffer any "good cause" for her complete failure to have moved to add these claims earlier in the litigation. Discovery is nearly completed, including expert discovery; yet, Plaintiff has permitted the Defendants to expend substantial time and money without ever before even mentioning the possibility of four additional claims. Thus, Defendants should not need to debate the lack of justification for this eleventh hour attempt to add new claims. Indeed, the only attempt Plaintiff makes at even asserting "new" facts" are involved, is actually to add allegations as to theories of liability. Specifically, she is seeking to add an allegation of constructive discharge--an absurdity in itself as the Plaintiff's employment was involuntarily terminated, and the concept of constructive discharge is only viable in cases where the Plaintiff voluntarily resigns. She is further seeking to add an additional allegation as to "vicarious liability" of the corporate Defendant, again, not a "new fact". In short, a plain reading of the proposed amended Complaint makes undeniably clear that Plaintiff had set forth sufficient allegations in the initial, Amended Complaint on which to base every claim she is seeking to add now.

15.    Plaintiff has thereby failed to present any legally cognizable basis for this egregiously untimely attempt to amend the Complaint. She has inexcusably delayed this

7

attempt, and has, as a result, forced Defendants to expend more time and money in opposing this unwarranted, unreasonable, and prejudicial effort.   Plaintiff has, by her silence during numerous discussions about discovery deadlines, blatantly misled the Defendants during discovery in this case, all to their detriment.   Moreover, she has exhibited bad faith in threatening a Defendant, John Bennett, and then introducing claims which expand the scope of discovery as she threatened she would attempt to do.   As a result, these proceedings will be unnecessarily and unreasonably multiplied.   Had Plaintiff's counsel acted diligently, these issues could have been fleshed out early in the pleading stage, within the discovery plan deadline, and would have been made part of the protracted and costly discovery already conducted.

16.       Consequently, it is respectfully requested that this Court refuse to permit Plaintiff to benefit by her own inexcusable, patently intentional, and bad faith delay in attempting to add new causes of action, and thereby prolonging and multiplying discovery in this case. Accordingly, these Defendants respectfully urge the Court to deny her request to amend the Complaint, and to award Defendants their costs and reasonable attorneys' fees incurred in having to oppose her wholly unwarranted Motion.

17.       In the event the Court permits any proposed amendment, Defendants respectfully request that they be awarded their costs and reasonable attorneys' fees incurred in having to reopen Plaintiff's deposition; reopen the scope of the expert examination; reopen the Plaintiff's retained and treating expert depositions; to serve and proceed upon supplemental written

8

discovery requests, and in connection with any and all other additional discovery necessitated by these new causes of action. [4]

## ARGUMENT

Plaintiff initially asserts that Rule 15(a) of the Federal Rules of Civil Procedure governs the Court's consideration of her motion. Specifically, Rule 15(a) provides that after an answer to a complaint has been served, the complaint may be amended "only by leave of the Court or by written consent of the adverse party . . . .". Plaintiff relies on the seemingly liberal standard for application of Rule 15(a), which provides that leave to amend a complaint shall be "given when justice so requires," within the sound discretion of the Court. See Foman v. Davis, 371 U.S. 178, 182 (1962); Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998); Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993); American Home Assurance Co. v. Jacky Maeder (H.K.), 969 F. Supp. 184, 187 (S.D.N.Y. 1997).

However, in beginning and ending with Rule 15(a), the Plaintiff's analysis is patently defective. On the contrary, where, as in this case, the proposed amendment is made outside of the deadline set by the discovery plan, the Court must first apply the principles established under Federal Rule of Civil Procedure 16(b). This Rule provides in pertinent part:

---

[4] It is anticipated that Plaintiff will argue that additional discovery would have been necessary in any event for the new causes of action, and thus, overlapping discovery is not involved. On the contrary, as an example, it cannot be disputed that when deposition testimony is broken up over months, attorneys need to again prepare witnesses, review prior testimony, etc., to complete these depositions. Bennett's counsel will need to completely repeat preparation to engage in adequate cross-examination on their client's behalf given he is named in new counts as well, and to re-open depositions they opted not to attend due to Bennett's previous, limited involvement as an individual party.

9

A schedule shall not be modified except upon a showing of good cause and by leave of the district judge, or when authorized by local rule, by a magistrate judge.

Thus, it should initially be emphasized that Plaintiff did **_not_** seek this Court's permission to modify the deadline set in the operative discovery plan, which established the deadline for amendments to the pleadings as May 15, 2003. In any event, it is clear that Plaintiff must make an initial showing of "good cause" for the Court to accept the proposed amendments. Good cause is routinely held to be absent where the facts show, among other notable factors, lack of timeliness, undue delay, dilatory tactics, and unsatisfactory explanation for the delay. See Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000), cert denied, 523 U.S. 923 (2001); Krumme, 143 F.3d at 88. " 'Good cause' means that the scheduling deadlines cannot be met despite a party's due diligence. In other words, to demonstrate 'good cause' a party must show that despite their due diligence the time table could not have been reasonably met. (citation omitted)." Carnite v. Granada Hospital Group, Inc., 175 F.R.D. 439, 446 (W.D.N.Y. 1997). See also, D. Conn. Loc. R. Civ. P. 11(a)(1); Parker v. Columbia Pictures, Indus. 204 F.3d 326 (2d Cir. 2000); Julian v. Equifax Check Servs., 178 F.R.D 10 (D. Conn. 1998); Berman v. Parco, 986 F. Supp. 195, 207 (S.D.N.Y. 1997); Deere v. Goodyear Tire & Rubber Co., 175 F.R.D. 157 (N.D.N.Y. 1997). Thus, contrary to Plaintiff's inference in her Motion to Amend, the liberal standard presented by Fed. R. Civ. Proc. 15(a) is not the initial standard she must satisfy; on the contrary, as the May 15, 2003 deadline for amendments has long expired, Plaintiff must satisfy her burden of demonstrating good cause for her seven and one-half month delay in asserting causes of action

10

where, by her own admission, new facts have not been discovered. See Foman, 371 U.S. at 182

(court should exercise its discretion to deny the motion where any of the following factors exist;

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, [or] futility of amendment"). See also, Evans v. Syracuse City

Sch. Dist., 704 F.2d 44 (2d Cir. 1983); Moffitt v. Town of Brookfield, 759 F. Supp. 94, 95 (D.

Conn. 1991); Browning Debenture Holders' Committee v. Dasa Corp., 560 F.2d 1078, 1086 (2d

Cir. 1977).

### The Proposed Amendments Are Blatantly Untimely and Inexplicably Delayed

Seeking leave to amend after the Court's deadline for amendments, such as the deadline

established by a discovery plan pursuant to Federal Rule 26(f), in itself, has been held to

constitute undue delay sufficient to warrant denial of a request to amend a complaint. See John

Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994)(motion

for leave to amend complaint rejected where plaintiff's motion was four months after the court's

deadline for amendments.); Lee v. Regal Cruises, Ltd., 116 F.3d 465 (2d Cir. 1997)(reported in

full at 1997 U.S. App. Lexis 13763--proposed amended complaint unduly delayed because the

nature of the amendments should have been known to the plaintiff at the time of original

complaint and plaintiff did not move to amend until ten months after the court-ordered cutoff

date for amendments).  Similarly, leave to amend has been denied "where the belated motion

would unduly delay the course of proceedings by, for example, introducing new issues for discovery." Grace, 228 F.3d at 54.

Consequently, Plaintiff's burden to provide a satisfactory explanation for her delay must be initially satisfied. See Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990); Champlain Enterprises, Inc. v. United States, 945 F. Supp. 468, 475 (N.D.N.Y. 1996). More specifically, where, as in this case, a lengthy period of time has elapsed between the original complaint and the proposed amendment, Plaintiff must "show some valid reasons for his or her neglect and delay." Champlain Enterprises, 945 F. Supp. at 475 (internal punctuation omitted). Yet, it bears repeating that Plaintiff, in her Motion, concedes the absence of newly discovered facts: "The new claims are based on the same operative facts as are present in the Amended Complaint already pending, with the exception of the additional proposed amended facts regarding vicarious liability of defendant Alea and that plaintiff was constructively discharged". (Motion, pages 2-3). It is only these latter amendments which Plaintiff asserts "are pled now based on facts that have come to light during the discovery process, that is, both documents produced by defendant on September 19, 2003 and depositions taken during the last two weeks of October, 2003." (Motion, page 3).

Thus, not only does Plaintiff admit most of what she seeks to add is not based on "new facts", but she also completely fails to set forth specifically what information was supposedly "discovered" during the last two weeks of October. Moreover, she fails to specify what was discovered on September 19 from documents produced, and, in any event, why it has taken her

12

seven months to add the causes of action based on facts already known, and an additional two-plus months to act upon the purportedly new facts.  In any event, what is clear from her own concessions is that Plaintiff had all the information she needed to bring each and every one of these amendments at the initial pleading stage.  In trying to minimize the significant impact of four new causes of action on nearly completed discovery, Plaintiff completely fails to address the actual, serious implications of adding four new causes of action—causes of action which will totally change the Defendants' (and Bennett's in particular) potential exposure in this case; and which involve different burdens, elements, and potential damages.  In short, Plaintiff utterly fails to meet her burden of showing good cause for why this Court should permit these amendments now.

With respect to the "new facts", it is noteworthy again here that an allegation of constructive discharge or an additional basis for vicarious liability are not new "facts", but additional theories of liability.  The added theory of constructive discharge in particular is inherently defective, as no party disputes Plaintiff's employment was ultimately involuntarily terminated, while the concept of constructive discharge operates only in cases of voluntary resignations.  Additionally, nothing new has been discovered by Plaintiff to increase the "vicarious liability" of any corporate defendant, and her casting wholly new causes of action in this light is intentionally misleading.

Indeed, Plaintiff has sat back while the Defendants spent hundreds of hours and nearly one hundred thousand dollars during the discovery process without any indication of the

13

possibility she would seek to add additional causes of action based in tort. She has made several motions to extend discovery deadlines—again, without even a mere mention of considering new claims. As previously emphasized, the Defendants, and Bennett in particular, have framed their entire strategy based on the claims in the operative Complaint. Defendant Bennett has restricted his participation in cross-examination, and in the expert discovery phase, based on the fact only one count remained against him in that Complaint. In short, Plaintiff has provided no excuse whatsoever for the egregious delay, and given her threats personally to Mr. Bennett, is demonstrating her bad faith in trying to expand this action only now.

For these reasons alone, the Court should deny her Motion to Amend. As the court held in <u>Carnrite</u>, 175 F.R.D. at 448, "counsel's 'inadvertence' or oversight is not good cause for purposes of Rule 16(b). Strict enforcement of the good cause requirement of Rule 16 may seem like unnecessarily strong medicine. But if the courts do not take seriously their own scheduling orders who will?...Failure to enforce Rule 16 would tend to subvert the important case management policy upon which the rule was based and undermine the court's ability to maintain compliance with its case management orders."

This principle is no less true in this case—Plaintiff has cavalierly flouted the various deadlines and opportunities to raise the potential amendments during the life of this case, yet unilaterally opted to wait until thirty days before the expiration of already twice extended discovery. Such conduct should not be condoned, nor should it operate to the additional prejudice of the Defendants by compelling them to expend significant fees in countering this

14

conduct. See also, Parker, 204 F.3d at 340 ("We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of 'good cause' depends on the diligence of the moving party." (citations omitted)).

### The Amendments Sought Will Severely Prejudice Defendants

As stated hereinabove, only if the Plaintiff is deemed to have met her burden of showing good cause for the delay in bringing the subject new claims does Fed. R. Civ. Proc. 15(a) even come into play. Yet, even if she reaches this analysis because she is deemed to have demonstrated good cause, to satisfy Rule 15(a), Plaintiff must also demonstrate the absence of prejudice to the Defendants by the amendments sought.

The mere conclusory and thoughtless posture stated in the Motion that prejudice will not result to these Defendants is absurd, at best, given that fact discovery **is nearly concluded**. Moreover, the expert witness discovery phase is similarly close to conclusion—Plaintiff's treating psychologist and retained expert psychiatrist have already been deposed. The examination of Plaintiff by Defendants' retained expert psychologist is within a few hours of being completed, with the scope of that examination having been determined by the fact that emotional distress was, prior hereto, only part of the damage case and not part of Plaintiff's case in chief on any cause of action. Furthermore, as previously emphasized, Bennett's participation in discovery, and election not to be a primary participant during the expert witness discovery, has

15

been deliberately restricted to the one remaining count in which he is a named defendant. Clearly, then, the resulting prejudice to Defendants is obvious and severe, constituting an additional and significant reason to deny leave to amend. See Foman, 371 U.S. at 182; Krumme, 143 F.3d at 88. [A] proposed amendment "... [is] especially prejudicial . . . [when] discovery had already been completed." Krumme, 143 F.3d at 88 (quoting Ansam Associates v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985)). See also, Bymoen v. Herzog, Heine, Geduld, Inc., 1991 WL 95387 *2 (S.D.N.Y. 1991); Barrows v. Forest Laboratories, Inc., 742 F.2d 54 (2d Cir. 1984)(fact that significant discovery had been completed may be sufficiently prejudicial to deny a motion to amend). Moreover, the longer the period of unexplained delay, the less the nonmoving party must do to show prejudice. Champlain Enterprises, 945 F. Supp. at 475; see also, Evans, 704 F.2d at 47.

Accordingly, the Motion for Leave to Amend should be denied even if the Plaintiff succeeds in establishing good cause.

### An Award of Fees to Defendants is Warranted

Plaintiff's refusal to abide by the clear deadlines set forth in the operative discovery plan, and her accompanying failure to seek prior leave of this Court to modify those deadlines, without excuse therefor, should be sanctioned. Simply stated, the burden of opposing her inexcusable delay in attempting to amend the complaint should not fall on the shoulders of the Defendants, but on the Plaintiff herself. See, e.g., Apex Oil Co. v. Belcher Co. of New York, Inc., 855 F.2d 1009 (2d Cir. 1988)(pursuant to 28 U.S.C. Section 1927, court can award sanctions against any

16

attorney who "so multiplies the proceedings in any case unreasonably and vexatiously....",

including to limit "the abuse of court processes", including discovery abuses)(quoting Roadway

Express v. Piper, 447 U.S. 752, 762, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980)); Lipsig v.

National Student Marketing Corp., 663 F.2d 178, 181 (D.C. Cir. 1980)("advocacy simply for the

sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants

recompense for the extra outlays attributable thereto."). As the courts held in Pacific Dunlop

Holdings, Inc. v. Barosh, 22 F.3d 113, 120 (7th Cir. 1994) and Burda v. M. Ecker Co., 2 F.3d

769, 778 (7th Cir. 1993), "vexatious" conduct involves either subjective or objective bad faith.

Extremely negligent or reckless conduct satisfies the objective bad faith standard. Citing to 28

U.S.C. § 1927, a "callous disregard for his responsibility to meet the time deadlines imposed" by

the court's rules and orders warranted an order that moving counsel personally pay fees to the

nonmoving party in Julien v. Zeringue, 864 F.2d 1572 (Fed. Cir. 1989). See also Braley v.

Campbell, 832 F.2d 1504, 1510-12 (10th Cir. 1987)(excess expenses and fees are imposable

against an attorney for conduct that, viewed objectively, manifests either intentional or reckless

disregard of the attorney's duties to the court; the provisions of 28 U.S.C. § 1927 focus on

conduct in specific litigation that imposes unreasonable and unwarranted burdens on the court

and opposing parties. Additionally, Section 1927 permits a court to insist that the attorney bear

the cost of his own lack of care).

    Clearly, here, Plaintiff's counsel was fully aware of the scope of claims she could have

brought based on the facts already known to her since the institution of this action. Yet, she

stood idly by while costly and protracted discovery was underway, including protracted

discussions concerning extensions of time she sought. Plaintiff then blatantly flouted the

deadlines set by the operative discovery plan and sent out a proposed Amended Complaint,

adding four new causes of action without seeking prior leave of this Court, and based on facts

already known to her at the commencement of this action, while callously asserting "no

prejudice" will result to the Defendants. This is exactly the type of conduct the Court has the

discretion to prohibit, and exactly the type of conduct 28 U.S.C. § 1927 was designed to rectify

so as not to unduly prejudice another party.[5]

---

[5] This is not the only instance whereby Plaintiff has disregarded the Federal Rules. Indeed, Plaintiff just forwarded a Notice of Deposition for, and is attempting to subpoena, a third party fact witness who was already deposed in this action, <u>without prior leave of Court</u>, in violation of Fed. R. Civ. Proc. 30(a)(2)(B). Clearly, Plaintiff intends to proceed without following proper procedure and irrespective of the Defendants' rights under the Rules.

## CONCLUSION

For the foregoing reasons, the undersigned Defendants respectfully request that this Court deny the Plaintiff's Motion for Leave to Amend her Complaint in all respects, and award them fees and costs incurred in having to oppose the Motion.[6]

In the event this Court sustains this objection, and deems an award of fees and costs to Defendants to be appropriate, it is further respectfully requested that Defendants be permitted to submit an Affidavit setting forth such fees and costs in detail.

> **EPSTEIN BECKER & GREEN, P.C.**
> Attorneys for Defendants
> Alea Group Holdings, Ltd., Alea North
> America Company, and Robert D. Byler
>
> By:_____
> Mary A. Gambardella
> Federal Bar No. ct05386
> One Landmark Square, Suite 1800
> Stamford, CT 06901-2601
> (203) 348-3737
>
> and
>
> Barry Asen
> Federal Bar #ct24527
> Counsel Pro Hac Vice
> 250 Park Avenue
> New York, New York 10177
> (212) 351-4500

---

[6] Again, in the alternative, it is respectfully requested that if this Court permits any amendment sought, it require Plaintiff to reimburse Defendants for their reasonable costs and attorneys' fees in having to reopen depositions, prepare again for additional cross-examination, etc.

19