UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LEIGH BOLICK,
       Plaintiff

vs.

ALEA GROUP HOLDINGS, LTD.,
ALEA NORTH AMERICA COMPANY,
JOHN J. BENNETT, AND
ROBERT D. BYLER,
       Defendants

CIVIL ACTION NO.
3:03CV165(PCD)

December 11, 2003

## REPLY MEMORANDUM

Plaintiff submits this Memorandum in Reply to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend Complaint and Request for Sanctions. Plaintiff further relies on the attached Affidavit of the undersigned counsel.

## I. FACTUAL BACKGROUND

The current discovery deadline is December 31, 2003. The scheduling order required that any amendments to the complaint be filed by May 15, 2003.

Defendants filed their initial disclosure on April 24, 2003, but did not provide copies of documents or location of documents at that time. Defendant identified a number of documents, including "investigative notes of human resources personnel reflecting the investigation of plaintiff's internal complaint" and "documents sufficient to establish the remedial action taken by Alea and Byler in response to the internal complaint filed by plaintiff" (Initial Disclosure of Defendant).

Defendants' sought an extension of time of 30 days to provide responses to plaintiff's initial discovery request, including requests for production. Plaintiff received the documents on or about September 19, 2003.

Plaintiff conducted depositions of defendant's witnesses during the last two weeks of October, 2003. Although Marti Lametta, a former human resources employee with defendants, was deposed on August 21, 2003, this was prior to receipt of discovery from defendants.

There is a pending Motion to Compel wherein plaintiff is seeking among other things portions of investigative notes that defendant's claim are privileged.

Contrary to defendant's counsel's statement (Def. Memo at 6, ¶ 11), Bennett's counsel received a copy of the proposed Amended complaint by fax on November 25, 2003, in response to counsel's request during a three way conversation between Ms. Gambardella, Ms. Schmitt-Minniti and the undersigned on that date.

## II. LEGAL ARGUMENT

Defendant's object to plaintiff's motion to amend claiming inexcusable delay, lack of good cause, bad faith, and prejudice to defendants. For the reasons stated below, these objections lack merit

### A. Standard

Defendant correctly points out (Def. Memo at 9-10) that the lenient standard under Rule 15(a), which provides leave to amend "shall be freely given," must be balanced against the requirement under Rule 16(b) that the Court's scheduling order "shall not be modified except upon a showing of good cause." Fed. R. civ. P. 15(a), 16(b). A finding of good cause depends on the diligence of the moving party. Grochowski v. Phoenix Construction, 318 F.3d 80 (2d Cir. 2003); In re WorldCom, Inc. Sec. Lit., 2003 U.S. Dist. LEXIS 21539 (S.D.N.Y. 2003) (amended complaint permitted

2

where no prejudice and diligence shown).

### B. Plaintiff has acted Diligently

Plaintiff's counsel filed a motion to amend the complaint as soon as reasonably practicable following the receipt of document production in September, as well as depositions of defense witnesses during the last two weeks of October, 2003.

Plaintiff received defendants' discovery responses 30 days late, albeit with permission, did not receive documents as part of initial disclosure as required by Fed. R. Civ. P. 26, and has filed a motion to compel seeking further documents.

This case is less than a year old and discovery is not complete. Counsel have worked diligently to complete discovery in the time allotted by the court, but it would be unjust to deny plaintiff's right to have her case heard on the merits and allow defendant's to benefit from their own delay in providing discovery in this case. See Moore v. City of Paducah, 790 F.2d 557, 562 (6th Cir. 1986)(denial of motion to amend was an abuse of discretion where rejection of the amendment would preclude plaintiff's opportunity to be heard on the merits on facts which are well known to the parties and which were pleaded at the outset... and where the defendant suffered only "relatively light prejudice".)

### C. No Bad Faith

Plaintiff's counsel made a good faith investigation into the facts at the outset of the case, but did not believe that the facts as pled warranted the claims that are now proposed. The undersigned counsel avoids pleading "garden variety" employment claims that do not seem warranted by counsel's view of the facts at the outset of a

3

case. The "everything but the kitchen sink" approach is, upon information and belief, disfavored by the courts. On the other hand, in a case where claims appear legally and factually warranted based on illumination of previously known facts, as well as new facts, plaintiff should be given leave to amend where there is no undue delay and no real prejudice to the defendant. The complaint was filed less than a year ago and plaintiff's complaint should be decided on the merits.

Plaintiff agrees that she "set forth sufficient allegations in the initial, Amended Complaint on which to base every claim she is seeking to add now." (Def. Memo. at 7) This is precisely why the amendment should be permitted and belies defendants' claim of prejudice. The only new "fact" that plaintiff seeks to add is the allegation that she was constructively discharged, which is more of a legal theory than a fact, and stems from facts elicited during the discovery process, that is from production of documents. See El Hajj v. Fortis Benefits Ins. Co., 156 F.Supp. 2d 27 (D.Me 2001)(good cause exists for defendant to amend answer where counsel made good faith investigation into the facts but overlooked a detail of the case that apparently demanded more scrutiny during discovery. See Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D.Me. 1985) (suggesting that "excusable neglect" can support a showing of good cause.)

Plaintiff has not filed the Motion for Leave to Amend the Complaint in bad faith and there is not a scintilla of evidence that she has done so. (Def. Memo at 8)

**1. Settlement Discussion**

It is completely inappropriate for counsel for defendant to disclose the nature of settlement discussion between the parties to the court. (Def. Memo. at 5) Defendant's

4

counsel has totally misrepresented the nature of the telephone conversation between the plaintiff and John Bennett, which was prompted by Bennett's counsel's clear message to the undersigned that Bennett wished to be let out of the case. Attempts by the undersigned to discuss settlement of the Bennett claim with his counsel were thwarted by plaintiff's counsel's perception of the close alliance between counsel for defendants. Plaintiff's counsel believed there might be a benefit in the parties speaking directly with one another. The proposed amendment, which was filed by the undersigned based on her legal opinion that it was the appropriate course of action, is not related in any way to unsuccessful settlement discussions between the parties.(Id.) Specifically, Ms. Bolick did not threaten anyone. The filing of the Motion to Amend originated with plaintiff's counsel based on her belief that the facts uncovered in discovery warranted the new claims.

### 2. Proposed Intentional Infliction of Emotional Distress Claim

In seeking to amend her complaint to bring a claim of intentional infliction of emotional distress, plaintiff is relying on "new information" obtained in discovery, specifically Doc. D0113, Marti Lametta Notes, wherein it states "legitimate nondiscriminatory reason to end the relationship to overcome the challenge of discrimination". These notes are dated June 3, 2002. This date was prior to defendant's meeting with Leigh Bolick to investigate her claim of retaliation against Rob Byler. At that point, she had only met with Byler and advised him that she believed he was retaliating against her.

These notes suggest that defendants had a premeditated plan to end plaintiff's

5

employment following her complaint of retaliation and before they investigated the complaint. In addition, Mr. Goldberg testified that following Ms. Bolick's complaint of retaliation in May, 2001, the defendant came up with a "plan". The notes of Marti Lametta thus seem more significant, that is, that "the plan" was to come up with a legitimate business reason for "ending the relationship." This fact, which need not be specifically alleged based on notice pleading standards in federal court, supports a claim of intentional infliction of emotional distress that plaintiff was unaware of until Mr. Goldberg's deposition on October 29, 2003. (Def. Memo at 12).

The notes of Marti Lametta and testimony of Len Goldberg forms the basis for the new allegation that plaintiff was constructively discharged. The evidence of premeditation suggests the requisite intent and outrageous conduct on the part of defendants necessary to prove the allegations of the intentional infliction of emotional distress complaint. (Def. Memo at 2) See Wilburn v. Fleet, 170 F.Supp. 2d 219, 238 (D.Conn.)(Although the Second Circuit has declined to state whether deliberateness on the part of the employer requires specific intent to force the employee to resign, it has stated that deliberate conduct requires more than mere negligence or inefffectiveness.)(citation omitted).

### 3. Negligent Supervision and Retention

What was discovered at depositions during the last two weeks of October that illuminated facts already alleged, specifically at Byler's deposition, was that following plaintiff's complaint to Robert Byler regarding Bennett's inappropriate behavior towards her, Byler arranged it so that they would not have to travel together, but *Bennett*

6

*continued as plaintiff's supervisor.* This supports a claim of negligence on the part of Byler and thus the defendant Alea. This claim does not require pleading additional facts, given the notice pleading standard in federal court and the facts already pled, (for example, that Bolick and Bennett traveled together again in December, 2001, after she had complained to Byler) However, the fact that Bennett continued as plaintiff's supervisor was not a fact previously known to plaintiff or her counsel. It is a fact that plaintiff's counsel in good faith believes would support a negligent supervision claim, and which she was unaware of until Byler's deposition.

### 4. Claims Against Bennett

As to the new proposed counts against Mr. Bennett, the fact discovered following the deadline for amending the complaint is from Robert Byler's notes from his interview with Bennett following plaintiff's complaint to Human Resources in January, 2001. In the notes of a meeting with Mr. Bennett on February 2, 2001, Doc. D0127, Bennett tells Byler that he may have said "I'm going to murder you" to the plaintiff. In an abundance of caution, it is the opinion of plaintiff's counsel that if a factfinder were to conclude that Bennett's behavior was not "sexual harassment", there is a "lesser included charge" that is actionable based on Bennett's outrageous conduct. Although threatening to hit plaintiff (as already alleged, Complaint, ¶ 22) would certainly have supported a claim of assault and invasion of privacy, the statement "I'm going to murder you", which was not provided to plaintiff until September 19, prompted plaintiff's counsel to move to amend to include the additional claims against Bennett.

Had Byler's notes, which were part of the investigation of the sexual harassment

7

claim that defendant asserts as a defense (Def. Answer, at page 9-10), been provided in Defendant's Initial Disclosure, plaintiff motion to amend may have been filed earlier.

### D. No Prejudice

Defendant's make no valid, specific showing of how they are prejudiced or how their strategy would have been different had the proposed claims been part of the case earlier. The intentional infliction of emotional distress claim is not brought against Mr. Bennett individually, so defendant's attempt to make a specific showing of prejudice in FN 3 of their Memorandum is irrelevant. Moreover, plaintiff has always alleged that she was unable to work as a result of the conduct of the defendants (Complaint ¶ 38). Simply because she now claims that defendants intended to cause that distress and that the distress is severe, does not change the allegations present in the pending complaint so as to cause prejudice to the defendant. In fact, plaintiff's current complaint alleges that the conduct of defendants' was malicious (Complaint, Counts 1 - 4). So the claim that the conduct of defendants' was intentional has always been present.

Plaintiff's proposed new allegation of constructive discharge is based on the discovery cited above (Marti Lametta notes) and is not an "absurdity" since the involuntary termination came one year after the alleged constructive discharge. That is, if plaintiff is able to prove constructive discharge, she would be entitled to back pay during that one year period or beyond, depending on whether the involuntary termination is found to be pretextual. (Def. Memo. at 7)

### 1. Minimal Further Discovery Required if Amendment Allowed

8

Plaintiff has no objection to reopening plaintiff's deposition with respect to the issue of constructive discharge. (Def. Memo, at 8, ¶ 17) There is no valid basis for reopening examination of experts. Plaintiff has always claimed that her distress is severe by virtue of the fact that she alleges a total disability and inability to work as a result of the conduct of the defendant. (Complaint, ¶ 22) Plaintiff's psychiatric expert opines that plaintiff suffers from post traumatic stress disorder as a result of the conduct of defendants. Defendant proffers no specific, concrete basis for having to reopen expert examination based on the allegation that plaintiff's emotional distress is "severe". motion where there was no bad faith, or intentional, undue delay of the proceedings.

This is not a situation where plaintiff is beyond the statute of limitations for the claims she seeks to bring. In fact, plaintiff could file a new complaint alleging these causes of action in state court. Since this would be inefficient given the fact that the same operative facts are at play in the proposed amended complaint as in the pending complaint, plaintiff should be permitted to amend her complaint.

Discovery is not completed, and had defendant not objected to plaintiff's motion to amend, an additional day of plaintiff's testimony could have easily been scheduled prior to the close of discovery. Moreover, the deposition of Dennis Purkiss, could have proceeded and been completed on the date it was scheduled in December. Defendant instead refused to produce Mr. Purkiss as originally agreed because it filed a Motion for Protective Order based on the fact that plaintiff filed a Motion to Amend the Complaint.

9

### E. Defendant's Request for Sanctions Should be Denied

Defendant's request for sanctions should be denied for all the reasons set forth above. Moreover, defendants should have produced the Notes of Marti Lametta in their initial production. Fed. R. Civ. P. 26(1)(B) provides that "a party must, without awaiting a discovery request, provide to other parties: a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses... "

Defendant claims that all decisions made by defendants "were based upon legitimate nondiscriminatory business factors" (Def. Answer at 10) Arguably, Ms. Lametta's notes, which were identified in initial disclosures but not provided, should have been disclosed, which may have prevented the need to amend beyond the date set in the scheduling order.

Defendant also requested a thirty day extension of time to respond to plaintiff's production requests. (Def. Memo at 2, FN1) Had defendant provided such documentation when it was originally due in mid August, plaintiff would have had the discovery for the deposition of Marti Lametta, conducted on August 21, 2003 prior to receipt of defendant's discovery, and would have been prompted to move to amend the complaint much earlier.

Defendants should not benefit from their own delays and disregard for the rules and under these circumstances is certainly not entitled to sanctions.

10

THE PLAINTIFF, LEIGH BOLICK

*Barbara E. Gardner* (signature)

Barbara E. Gardner
CT07623
843 Main St., Suite 1-4
Manchester, CT 06040
(860)643-5543
(860)645-9554(fax)
Bg@bgardnerlaw.com

11

**CERTIFICATION OF SERVICE**

I hereby certify that a copy of the foregoing was ~~mailed, postage prepaid,~~ hand delivered this ~~11th~~ 12th day of December, 2003, to:

Mary A. Gambardella
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601

Saundra Yaklin, Esq.
ReedSmith LLP
599 Lexington Ave., 29th Floor
New York, NY 10022

*Barbara E. Gardner*
Barbara E. Gardner

12