UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

FILED

2004 JAN 13  A 10: 07

U.S. DISTRICT COURT
NEW HAVEN, CONN.

LEIGH BOLICK,
 Plaintiff
vs.

Civil No. 3:03cv165 (PCD)

ALEA GROUP HOLDINGS LTD.,
ET AL.,
 Defendants

## RULING ON PLAINTIFF'S MOTIONS TO COMPEL

Plaintiff moves [Doc. No. 59] to compel Defendants to produce several items and for Defendant Bennett be compelled [Doc. No. 65] to answer certain questions at deposition. For the reasons stated herein, Plaintiff's Motion to Compel testimony [Doc. No. 65] is **granted** and Plaintiff's Motion to Compel production [Doc. No. 59] is **granted in part**.

### I. BACKGROUND:

This is an action asserting violations of Title VII, 42 U.S.C. § 2000 et seq; the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq; Fair Labor Standards Act, 29 U.S.C. § 201 et seq, as amended by the Equal Pay Act, 29 U.S.C. § 206(d); breach of implied contract, the implied covenant of good faith and fair dealing, and negligent misrepresentation.

### II. STANDARD OF REVIEW:

"[T]he scope of discovery under FED. R. CIV. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964

1

F.2d 106, 114 (2d Cir. 1992), quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L. Ed. 2d 253 (1978). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome . . . [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2). An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be tailored to the circumstances of the case. Gile v. United Airlines, Inc., 95 F.3d 492, 496 (7th Cir. 1996). The burden is on the party asserting a privilege to establish its existence. See In re Grand Jury Subpoena, 599 F.2d 504, 510 (2d Cir. 1979) ("[I]n claiming the protection of the attorney-client privilege '(t)he corporation has the burden of showing that the communication was made for the purpose of securing Legal advice, I. e., that it was made in contemplation of future professional action by the attorney'") (citation omitted).

**III. DISCUSSION:**

    1.    Request to Produce Defendant Bennett's Separation Agreement and Compel Testimony:

Plaintiff seeks production of Defendant Bennett's severance agreement relating to his January 2002 departure from Defendant Alea's employment. Plaintiff also seeks to compel Defendant Bennett to testify as to those terms at deposition. Plaintiff argues that this information is "relevant to his motivation for leaving and his 'consciousness of guilt' in making that decision."

Pl. Mem. Supp. Mot. to Compel at 2. In her Reply Brief, Plaintiff also argues that the agreement is relevant to show "possible bias" by Defendant Bennett and the remaining Defendants "motive to retaliate." Pl. Reply Br. at 1-2.

Defendants' argue, first, that they have already disclosed the bulk of the terms of the severance agreement and that the only remaining term at issue is the exact compensation Defendant Bennett received. Def. Bennett's Mem. Opp. Mot. to Compel at 4.[1] Defendants also argue that the information is not discoverable based on Fed. R. Evid. 403 and 408. Def. Alea and Byler Mem. Opp. Mot. to Compel at 4-8 and Def. Bennett Mem. Opp. Mot. to Compel at 5-7. Defendants also make the policy argument that if severance agreements are discoverable, it will cause employers to be wary about making such agreements in the future. Id.

Both Rules of Evidence 403 and 408 address the admissibility of evidence, not whether it should be discoverable. Similarly, Defendants policy based arguments are best addressed in the context of the admissibility of evidence, not discovery. The only Rule applicable on its face is 26(b)(1), which requires only a showing of relevance. Fed. R. Evid. 26(b)(1); see also Johnson Matthey, Inc. v. Research Corp., No. 01 Civ. 8115 (MBM)(FM), 2003 U.S. Dist. LEXIS 11422, *8 (S.D.N.Y. June 12, 2003) ("Rule 26(b)(1) requires a showing of relevance. Where the discovery sought is relevant to a claim or defense, no special showing must be made").[2] Thus,

---

[1] Specifically Defendants have disclosed that 1) the severance agreement released Alea from any claims Bennett may have had against it; 2) that Defendant Bennett received monetary compensation for this release; 3) that Bennett was permitted to resign; and 4) the date Defendant Bennett left Alea. Def. Bennett's Mem. Opp. Mot. to Compel at 4.

[2] It is worth noting that some courts have used the policy behind Fed. R. Evid. 408 to impose a higher burden on parties seeking discovery of information contained in settlement agreements when the requestor is not party to the agreement. See e.g. Bottaro v. Hatton Assocs., 96 F.R.D. 158, 160 (E.D.N.Y. 1982) ("[T]he better rule is to require some particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement"); see also Johnson Matthey, 2003 U.S. Dist. LEXIS at *5-6. However, at

3

the question here is only whether the information is relevant and reasonably calculated to lead to admissible information, not whether it is unduly prejudicial and/or not itself admissible.[3]

The standard for demonstrating relevance is broad, see Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"), however Plaintiff's arguments to establish relevance are misleading inasmuch as it was entirely unclear from her Briefs that Defendants had already disclosed all but the amount of Defendant Bennett's compensation. Nevertheless, Plaintiff does meet the threshold requirements for demonstrating relevance. At a minimum, attempting to demonstrate the possible biases of Defendant Bennett, should he testify, is relevant to the matter at hand and may indeed be admissible or lead to admissible information. Whether it is in fact admissible is, again, an issue that is not necessary to decide here.

Accordingly, Plaintiff's Motion to Compel the terms of Defendant Bennett's severance agreement is **granted**. For the same reasons, her Motion to Compel testimony at deposition pertaining to those same terms is **granted** as well, unless parties agree that such testimony would be duplicative in light of the production of the settlement terms.

2.  Request for Production of Defendant Bennett's Personnel File:

Plaintiff requests that Defendant Bennett's personnel file be produced. She argues that it

---

least as many courts have refused to apply such a standard. See In re Initial Pub. Offering Sec. Litig., No. 21 MC 92 (SAS), 2003 U.S. Dist. LEXIS 23102, n. 38 (S.D.N.Y. December 24, 2003) (collecting cases). Defendants do not explicitly raise the question of whether a more particularized showing should be required, thus the issue need not be addressed here.

[3] Defendants do concede that to the extent that the evidence is offered "for other purposes, such as proving bias or prejudice[,]" Rule 408's prohibition is not absolute. Def. Alea and Byler's Mem. Opp. Mot. to Compel at 6.

4

is relevant in order to determine whether 1) Defendant Bennett was ever reprimanded or disciplined for his conduct towards women in the past; and 2) to examine his performance reviews, qualifications, and salary, because Plaintiff sought his position after he resigned and Defendants have asserted that Plaintiff's performance was deficient when compared to others in the Marketing Department. Pl. Reply Br. at 3.

Defendants argue that 1) the information is not relevant; 2) the position Plaintiff sought of Senior Vice President did not exist in Plaintiff's group at the time she sought it; 3) witnesses have already testified both as to his background and that Defendant Bennett was never reprimanded or disciplined as a result of his conduct towards women; and 4) such information is protected by statute in Connecticut. See Conn. Gen. Stat. § 31-128f (Generally prohibiting the disclosure of identifiable information in personnel files without employee consent). Def. Alea and Byler's Mem. Opp. Mot. to Compel at 9-10.

With respect to Defendants' arguments concerning § 31-128f, the statute specifically excludes nondisclosure when "the information is limited to the verification of dates of employment and the employee's title or position and wage or salary...." Additionally, disclosure is permissible when given "pursuant to a lawfully issued administrative summons or judicial order...." Id. Accordingly, the statute itself does not provide a basis for refusing discovery and whatever policy decisions motivated the passing of the Act were clearly intended to give way to a judicial order compelling discovery of the protected information.[4] Plaintiff's offered rationale for seeking discovery of Defendant Bennett's personnel file is clearly relevant to exploring the

---

[4] This is not to say that privacy concerns are irrelevant, or should not be considered, but that they must and were intended to give way when necessary in the context of litigation.

various claims and defenses at issue in this case.[5]

Defendants other arguments fail as well. Whether the position existed at the time Plaintiff sought it is not dispositive with respect to all bases for asserting relevance. The fact that witnesses have testified that Defendant Bennett was not disciplined or reprimanded for his conduct towards women is not as reliable as the information contained in the file itself.

Accordingly, Plaintiff's Motion to Compel production of Defendant Bennett's personnel file is **granted**. However, to the extent that the file contains potentially sensitive personal information not relevant to Plaintiff's motivation for seeking discovery, that information may be redacted.

### 3. Request for Salary Information of all ANAC Employees above Assistant Vice President:

Plaintiff seeks production of salary information, excluding names, for all employees above the position of Vice President as she claims the information is relevant to her gender discrimination and Equal Pay Act claims. Defendants object, arguing that the salary information provided should be limited to that already provided, namely, information pertaining to Vice Presidents in the Marketing Department of which Plaintiff was a member. Def. Alea and Byler's Mem. Opp. Mot. to Compel at 11. Defendants further argue that Plaintiff has not alleged discrimination at all levels of the company and that discovery is properly limited to those similarly situated to Plaintiff. Id. at 12.[6]

In the context of Title VII litigation, "similarly situated" has been interpreted to require

---

[5] Again, this is not a ruling as to the admissibility of such evidence.

[6] Defendants also invoke Conn. Gen. Stat. § 31-128f. For the same reasons discussed above, namely that salary information is excluded from protection and a judicial order overcomes whatever privacy interest may exist, this argument is unconvincing.

showing that "other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." Mazzella v. RCA Global Communications, Inc., 642 F. Supp. 1531, 1547 (S.D.N.Y. 1986), aff'd 814 F.2d 653 (2d Cir. 1987). Defendants cite Fayson v. Kaleida Health, Inc., No. 00-CV-0860E (Sr), 2002 U.S. Dist. LEXIS 18591 (W.D.N.Y. September 18, 2002) for the proposition that the Equal Pay Act standards for demonstrating that employees are similarly situated is the same as the standard used for Title VII case. Def. Alea and Byler's Mem. Opp. Mot. to Compel at 12. At least insofar as Defendants interpret this to establish a blanket rule that employees outside of Plaintiff's group are not similarly situated to her under the Equal Pay Act, Fayson does not stand for this proposition. Fayson states that it is the job content, not the title or description, that is determinative for showing that the jobs were equal and performed under similar circumstances. 2002 U.S. Dist. LEXIS 18591 at *35. This position is supported by Second Circuit appellate level law. See e.g. Lavin-McEleney v. Marist College, 239 F.3d 476, 480 (2d Cir. 2001) (A "plaintiff need not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are 'substantially equal' in skill, effort, and responsibility") (citation omitted). Accordingly, it is the content of the job that is relevant and not simply the fact that the position was or was not in the same department. Therefore, to the extent that Plaintiff seeks discovery of salary information of other positions for purposes of comparison in line with the above cited standards, her Motion is **granted**.

4. <u>Request for Minutes of Board Meetings Wherein the Subject of Bonus Payments for 2001 was Discussed</u>:

Plaintiff requests the minutes from any Board meetings that discussed whether employees would be paid a bonus for 2001. Defendants assert that no such minutes or responsive documents exist. Plaintiff argues that the existence of responsive documents is unclear and asks that Defendants be ordered to produce any responsive documents that do exist. There is no ambiguity in Defendants' statement that Plaintiff "has already been advised responsive documents simply do not exist." Def. Alea and Byler's Mem. Opp. Mot. to Compel at 14. Accordingly, Plaintiff's Motion to Compel production of such minutes is **denied**.

5. <u>Request for Production of Documents Relied on by Defendants in Refusing to Pay Bonuses in 2001</u>:

Plaintiff requests production of any documents that Defendants relied on in making their determination that no bonus was to be paid in 2001. She suggests only that she "is entitled to know the company's position as to why a bonus was not paid...." Pl. Mem. Supp. Mot. to Compel at 3. Plaintiff does, however, limit her request insofar as any of the documents produced would be duplicative. <u>Id</u>. Defendants contend that sufficient information has already been provided and that the "breadth of [Plaintiff's] request potentially encompasses each and every document reflecting revenue generation and company performance." Def. Alea and Byler's Mem. Opp. Mot. to Compel at 16. Plaintiff states that the only information she has received from Defendants is that "noone [sic] received a bonus." Pl. Reply Br. at 6.

It is difficult to evaluate which party is being honest. Defendants' reasons for not providing a bonus could lead to evidence relevant to Plaintiff's breach of implied contract claim and thus Plaintiff is entitled to the production of some reason (for presumably there was one).

8

Conversely, evidence that amounts only to the proposition that no one received a bonus is not responsive and would not amount to "sufficient information concerning the reasons why bonuses were not paid to employees" or constitute "extensive testimony on this issue" as Defendants claim they have provided. Def. Alea and Byler's Mem. Opp. Mot. to Compel at 16. Thus, Plaintiff's Motion is **granted** insofar as Defendants have not provided any information that goes beyond the claim that no one received a bonus. Defendants are not required to produce duplicative documents[7] and only need produce representative documents that would explain or give evidence of whatever financial, or other, reasons went into the decision not to offer bonuses to employees.

6. Request for Personnel Files of Plaintiff's Peers in Marketing Department:

Plaintiff requests production of the personnel files of her peers in the marketing department. She alleges that she is entitled to information about such individuals performance evaluations because Defendants have suggested that Plaintiff's performance was deficient as a defense to her discrimination claim. Pl. Reply Br. at 5. Plaintiff also suggests that although she is already in possession of such individuals salary and qualification information upon hire, she is "entitled to updated information as to salary and ongoing information as to performance." Id. at 5. Defendants object, arguing the confidentiality/privacy interests of the employees. Def. Alea and Byler's Mem. Opp. Mot. to Compel at 14-15.

The period of time for which Plaintiff requests these documents is unclear. It is clear,

---

[7] While the scope of discovery is broad, it is not without boundaries and may be limited when requests for production are "unreasonably cumulative or duplicative," overly "burdensome . . . [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2).

however, that for comparative purposes, at least as far as the performance reports and salaries are concerned, the only relevant period of time is that of Plaintiff's employment. Within that period, whether other employees within her group had similar alleged performance deficiencies is relevant to any attempt to rebut Defendants' defense. Salary information may be relevant as well. Thus, Plaintiff's Motion to Compel is **granted** as it pertains to that information and to the extent that Defendants have not produced such information. However, all other potentially personal and sensitive information not relevant to Plaintiff's concerns may be redacted.

7.   Request to Produce Organization Chart:

Plaintiff requests that Defendants produce an organization chart that sets forth the corporate organization and reporting relationships of and between Alea Group and ANAC. If no such chart exists, Plaintiff requests documents from which Plaintiff could infer that information. Defendants contend that they now have produced such a chart. Plaintiff does not indicate that this compliance is unsatisfactory. Accordingly, Plaintiff's Motion to Compel is **denied** as moot.

8.   Assertions of Privilege:

"The broad outlines of the attorney-client privilege are clear: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." United States v. International Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997). Moreover, it is axiomatic that the burden is on the party asserting a privilege to establish those facts necessary to support its claim. In re Grand Jury Subpoena, 599 F.2d at 510; In re Horowitz, 482 F.2d 72, 82 (2d Cir. 1973), cert denied 414 U.S. 867, 38 L. Ed. 2d 86, 94 S.

Ct. 64 (1973). "That burden is not, of course, discharged by mere conclusory or ipse dixit assertions, for any such rule would foreclose meaningful inquiry into the existence of the relationship, and any spurious claims could never be exposed." In re Bonanno, 344 F.2d 830, 833 (2d Cir. 1965).

    a.    Privilege Log - Item 1:

Defendants' Privilege Log Item 1 refers to "[n]otes incorporating attorney/client communications for meeting with John Bennett 1/24/02" and nothing more. In their Opposition Brief, Defendants argue that they have "already stated under oath at depositions that the redacted portions ... reflect communications between that author and outside counsel." Def. Alea and Byler's Mem. Opp. Mot. to Compel at 17. Testimony at deposition is irrelevant to the issue here when there is no record of such testimony reflected in the papers before the Court. Moreover, nowhere do Defendants even state conclusorily that the communications were with an attorney in his/her role *as such*. The mere fact that a communication is between an attorney and client does not establish it as privileged. Accordingly, Defendants have not met their burden of establishing the existence of an attorney-client privilege before this Court. Nevertheless, in the interest of avoiding the compromise any privilege that may exist, Defendants are not ordered to produce the items at this time. Instead, Defendants are ordered to submit the documents at issue to this Court for *in camera* review and a more complete evaluation of the existence any such privilege.

    b.    Privilege Log - Item Number 2:

Defendants Privilege Log Item 2 discusses "[v]arious emailed communications between Human Resource Department and Michael R. Halsband, Esquire, Senior Vice President and General Counsel of ANAC, spanning dates between September 2002 through in or about or

11

about [*sic*] December of 2002, concerning Plaintiff's request for FMLA qualified leave." Defendant contends that the "communications were the direct result of consultation between Attorney Halsband as the company's attorney and the former Vice President and Director of Human Resources concerning subject matters within the purview of this litigation." Def. Alea and Byler's Mem. Opp. Mot. to Compel at 18. Defendants fault Plaintiff for failing to seek clarification of this privilege before filing her Motion and not providing evidence to contradict Defendants claim of privilege. Id. Plaintiff argues that the communications were merely to ascertain company policy on wage continuation benefits and not seeking legal advice. Pl. Reply Br. at 8.

Again, Defendants have failed to properly establish the existence of an attorney-client privilege and have provided nothing more than a conclusory statement to that effect. There is simply no way to effectively evaluate the veracity of the privilege claim based on the papers submitted. However, as with Item 1, Defendants are ordered to submit the documents for *in camera* review and subsequent ruling on Plaintiff's Motion as it pertains to this point.

   c.   Privilege Log - Item 9:

Item 9 references a "[t]yped chronology prepared by Marti Lametta reflecting events as alleged by Plaintiff to have occurred from October 2000 through January 10, 2002, at the request of outside counsel and for use by outside counsel." Defendant asserts that the document was created to assist in the defense of Plaintiffs claims. Def. Alea and Byler's Mem. Opp. Mot. to Compel at 19. Defendants also fault Plaintiff for failing to seek clarification of the nature of the privilege asserted earlier and not providing "any basis for her claims the privilege does not apply." Id. Plaintiff argues that because Defendants have not indicated the date at which the

item was created, it is impossible to tell if it was prepared as part of the investigation of Plaintiff's claims. But, if it was, she argues that because Defendants have raised the adequacy of their investigation as a defense to Plaintiff's claims, they have waived any privilege asserted. Pl. Reply Br. at 8.

Regardless of whether Plaintiff should have sought clarification of the nature of the privilege asserted earlier, the burden still falls on Defendants to satisfactorily establish its existence. There is no factual basis provided in the papers before the Court sufficient to allow such an evaluation. As a result, Defendants are also ordered to submit this item for *in camera* review and later evaluation.

### IV. CONCLUSION:

For the reasons stated herein, Plaintiff's Motions to Compel testimony [Doc. No. 65] is **granted** and Plaintiff's Motion to Compel production [Doc. No. 59] is **granted in part**, subject to the conditions outlined above. Defendants shall submit all documents for *in camera* review on or before January 22, 2004.

SO ORDERED. Dated at New Haven, Connecticut, January 13, 2004.

_____
Peter C. Dorsey, U.S. District Judge
United States District Court