When a supervisor with immediate authority over the employee has engaged in the complained of conduct the employer may be subject to vicarious liability. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998), Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). It is undisputed that Bennett was Ms. Bolick's immediate supervisor. In Ellerth the court held that if behavior illegal under Title VII culminates in a supervisor's tangible employment action, the employer will be liable for it. 524 U.S. at 761-63; see also Jin v. Metro. Life Ins. Co., 310 F.3d 84, 92 (2d Cir. 2002). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." 524 U.S. at 761. There is no requirement that a tangible employment action inflict economic harm. Ellerth, 524 U.S. at 762.

In this case, Bennett threatened to reduce plaintiff's management responsibilities and opportunities in the captive market and relegate her to a lesser role marketing an individual territory. Those threats were eventually carried out by Byler following Bennett's departure. This was in sharp contrast to the position plaintiff held prior to confronting Bennett with her e-mail on December 21, 2001. A jury could reasonably find that this was a "reassignment with significantly different responsibilities" done in retaliation for plaintiff's failure to engage in an intimate relationship with Bennett and thus a tangible employment action.

As the Court stated in Faragher, employer liability for discriminatory misuse of supervisory authority "is underscored by the fact that the employer has a greater opportunity to guard against misconduct by supervisors than by common workers." 524 U.S. at 803. Employers for example, have the "opportunity and incentive to screen supervisors, train them, and monitor their performance." *Id* This opportunity is certainly crucial when the conduct to be guarded against is the assault of an employee in the

24

employer's own offices. See Jin, 310 F.3d at 94.

### a. Affirmative Defense Does Not Apply

Where a tangible employment action is not involved, the employer is nonetheless subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate authority over the employee. But in such cases an employer may raise an affirmative defense consisting of two elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. Ellerth, 524 U.S. at 765; Faragher, 524 U.S. at 807.

The existence of an anti-harassment policy with complaint procedures, including whether it has been published and disseminated to employees, is an important consideration in determining whether the employer has satisfied the first prong of this defense. Faragher, 524 U.S. at 808-809; Caridad v. Metro-North Commuter R.R. 191 F.3d 283, 295 (2d Cir. 1999).

In Faragher, a city lifeguard sued the City of Boca Raton for sexual harassment by two of her supervisors. The Supreme Court reinstated the district court verdict for the plaintiff, holding as a matter of law that the City could not satisfy the first prong of the affirmative defense, notwithstanding the existence of a sexual harassment policy, because it "had entirely failed to disseminate its policy against sexual harassment among the beach employees and... made no attempt to keep track of the conduct of its supervisors." 524 U.S. at 808; see also P.F. v. Delta Air Lines, Inc., 102 F.Supp. 2d 132, 140 (E.D.N.Y. 2000)(factors relevant to determining whether an employer has provided a reasonable avenue for complaint include, inter alia, whether the policy is seriously enforced, whether employees are informed how to report sexual harassment, and whether the policy is effectively communicated to employees).

25

In this case it is undisputed that there was no written anti-harassment policy or complaint procedures. Nor was there any communication of any such policies, even verbally, to employees. Although plaintiff complained and Byler attempted to take remedial action, reasonable jurors could conclude that his response was inadequate, particularly where Bennett was allowed to continue as plaintiff's supervisor. Title VII requires remedial action taken be reasonably calculated to end the harassment. Cooper, 106 F.Supp 2d at 495; Dortz v. City of New York, 904 F.Supp. 127, 154 (S.D.N.Y. 1995) (holding employer's remedial action of instructing harasser to speak to the plaintiff only in the presence of others "did not effectively cleanse the hostile environment caused by the sexual harassment.)

In this case, defendant cannot rely on the fact that plaintiff requested that the matter be kept confidential. An employer has an obligation to investigate a claim of sexual harassment even when the employee decides not to proceed with her complaint. Nor is the company's duty to investigate subordinated to the victim's desire to let the matter drop. Prudent employers will compel harassing employees to cease all such conduct and will not, even at a victim's request, tolerate inappropriate conduct that may, if not halted immediately, create a hostile environment. Malik v. Carrier Corp. 202 F.3d 97, 106; O'Dell v. Trans World Entertainment Corp., 153 F.Supp. 2d 378 (S.D.N.Y. 2001) "If the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate." Gallagher v. Delaney 139 F.3d 338, 348 (2d Cir. 1997); Kracunas v. Iona College, 119 F.3d 80, 89 (2d Cir. 1997)

The question of whether an employer has provided a reasonable avenue of complaint is a question for the jury. Reed v. A.H. Lawrence, 95 F.3d 1170 (2d Cir. 1996); Wilburn v. Fleet, 170 F.Supp. 2d 219 (D.Conn. 2001).

Thus, defendants have failed to meet their burden of proving the absence of any

26

genuine issue of disputed fact as to whether they acted with reasonable care to prevent and correctly prompt sexually harassing behavior.

**B.    Retaliation**

Title VII prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a).

**1. Prima Facie Case**

In order to establish a prima facie case of retaliation under Title VII, plaintiff must show by a preponderance of the evidence (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Cifra v. General Electric Co., 252 F.3d 205, 216 (2d Cir. 2001); See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802.

As to the third element, plaintiff need only show that a retaliatory motive played a part in the adverse employment action, whether or not it was the sole cause, and even if valid objective reasons for the discharge exist. Sumner v. U.S. Postal Service, 899 F.2d 203, 208-209 (2d Cir. 1990; Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998); Gallagher v. Delaney, 139 F.3d 338, 349 (2d Cir. 1998); Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir. 1996).

As will be further discussed below, plaintiff has adduced sufficient evidence from which a jury could find in plaintiff's favor as to each of the elements of her claim.

27

### a. Deminimis Burden

The plaintiff's burden at this stage is not onerous. Chambers v. TRM Copy Centers Corp., 43 F.3d 289, 37 (2d Cir. 1994). In determining whether the plaintiff has met the deminimis initial burden, the function of this Court on a summary judgment motion is to determine whether the proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a discriminatory motive. See Donahue v. Windsor Locks Board of Fire Commissioners, 834 F.2d 54, 58 (2d Cir. 1987).

### b. Burden Shifting and Pretext

Once plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, clear, specific and nondiscriminatory reason for the adverse employment action. See Gallo, 22 F.3d at 1226. If the defendant satisfies this burden, the plaintiff has the ultimate burden to prove that the employer's reason was merely a pretext for discrimination.

For summary judgment purposes, unless an employer has come forward with evidence of a dispositive nondiscriminatory reason for the adverse action as to which there is no genuine issue and which no rational trier of fact could reject, any conflict between the employee's evidence establishing the prima facie case and the employer's evidence of a non-discriminatory reason reflects a question of fact to be resolved by the fact-finder. Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 293 (2d Cir. 1995).

The factfinder's disbelief of the reasons put forward by the defendant, together with the elements of the prima facie case, may suffice to show intentional discrimination. This is because rejection of the defendant's proffered reasons will

28

permit the trier of fact to infer the ultimate fact of intentional discrimination.

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

Reeves, 530 U.S. 133, 136 (2000)(citations omitted). See also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

As stated above, plaintiff can establish her retaliation claim by showing that the alleged legitimate business reasons were not the only reason for the alleged adverse actions and that her engaging in protected activity made a difference. Montana, 859 F.2d at 105 citing Hagelthorn v. Kennecott Corp. 710 F.2d 76, 82 (2d Cir. 1983). Even if, for example, the restructuring of the marketing department was legitimate following Bennett's departure, a claim that the employer has subjected the plaintiff to discrimination as an individual does not require the plaintiff to prove that the restructuring as a whole was pretextual. "In such circumstances, a plaintiff defending a motion for summary judgment need demonstrate only that a genuine issue exists as to whether, despite the employer's ostensible rationale and overall operations, intentional discrimination is the persuasive explanation for the plaintiff's treatment." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 204(2d Cir. 1995). Title VII allows a cause of action against business decisions that merge with discrimination. See Montana v. First Federal Savings and Loan, 869 F.2d 100 (2d Cir. 1989) (summary judgment reversed where in structural reorganization case, plaintiff put forth sufficient evidence that discharge

29

occurred under circumstances giving rise to an inference of discrimination, including failure to offer plaintiff alternative available positions); Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985)(courts must refrain from second guessing decision making processes, but must allow employees to show that employer acted in an illegitimate or arbitrary manner).

As further discussed below, In this case, there are numerous genuine issues of material fact in dispute as to whether defendant's stated reasons for adverse actions disadvantaging plaintiff were pretextual, and, thus, whether her complaint under Title VII was a factor in plaintiff's termination.

### 2. Plaintiff Engaged in Protected Activity Known to Defendants

It is undisputed that Plaintiff engaged in protected activity known to defendants when she made a complaint against her supervisor Bennett for sexual harassment. She first reported her complaint to Byler in November, 2000 and in January, 2002 went to Human Resources. Finally, plaintiff engaged in protected activity when she filed her claim of sexual harassment and retaliation at the CHRO in June, 2002.

Title VII's anti-retaliation provision is broadly drawn. As court's have consistently recognized, the explicit language of §704(a)'s participation clause is expansive and seemingly contains no limitations. Deravin v. Kerik and NYC Dept. of Corrections, 335 F.3d 195, 203-204 (2d Cir. 2003) As the Supreme Court has noted, "read naturally, the word 'any' has an expansive meaning," and thus, so long as "Congress did not add any language limiting the breadth of that word," the term "any" must be given literal effect. United States v. Gonzales, 520 U.S. 1, 5 (1997). Opposition to a Title VII violation need

30

not rise to the level of a formal complaint in order to receive statutory protection. Cruz v. Coach Stores, 202 F.3d 560, 566 (2d Cir. 2000). Plaintiff need only demonstrate that she had a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769(1998).

There is sufficient evidence, and apparently defendant does not dispute, that plaintiff engaged in protected activity know to defendants.

### 3. Plaintiff Suffered Adverse Employment Actions

Plaintiff is claiming that she experienced numerous adverse employment actions at the hands of the defendant following her complaint to Human Resources in January, 2002.

Adverse employment actions are materially adverse changes in the terms, privileges, duration, and conditions of employment. Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir.). Adverse actions are considered material if they are of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse. Torres v. Pisano, 116 F.3d 625, 632 (2d Cir. 1997)(emphasis added). Adverse employment actions are not limited to "pecuniary emoluments." Preda v. Nissho Iwai Am. Corp., 128 F.3d 789, 791 (2d Cir. 1997). Claims of discriminatory failure to promote fall within the core activities encompassed by the term "adverse actions". Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999). Adverse employment actions include demotions. *Id*. An internal transfer can be an adverse employment action if "accompanied by a negative change in the terms and conditions of employment." *Id*. at 113. In addition, plaintiff may show that "(1)using an

31

objective standard; (2) the total circumstances of her working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002). An example of a materially adverse change includes significantly diminished material responsibilities. Terry v. Ashcroft, 336 F.3d 128, 138 (2003); DelaCruz v. NYC Human Res. Admin. Dept. of Soc. Svs, 82 F.3d 16, 21 (2d Cir. 1996)(plaintiff showed adverse employment action where even though transferred to job with same rank and pay, the new position was arguably less prestigious or entailed diminished responsibilities.)

Less flagrant reprisals by employers may also be adverse. Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999). As there are no bright line rules, courts must pore over each case to determine whether the challenged employment action reaches the level of adverse. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir. 1997).

In this case, plaintiff alleges the following adverse employment actions occurred after she engaged in protected activity:

> 1) her promotion was unreasonably delayed causing lost use of increased wages, humiliation and damage to her reputation;
> 2) she was demoted in that her managerial responsibilities were taken from her and the opportunity to do captive business was taken from her;
> 3) she was assigned to a remote territory, the Southeast, when she lived in the Northeast, which would require her to travel more frequently.
> 4) she was paid less than the three new Vice Presidents who were doing the same job, even though she had greater experience, and seniority at the company;
> 5) she remained in a cubicle, while the new, male Vice President got Bennett's old office;
> 6) she was refused permission to go to a conference on captives and told it was "over her head."

7) she was left out of meetings, ignored by Byler, and isolated.
8) she was humiliated at a marketing meeting by Byler, who objected to everything she said and cut her off when she attempted to speak.
9) the Bermuda territory, which, along with the Northeast, contained the vast majority of captive business, was assigned to the newest and least experienced new male hire.
10) defendant refused to transfer plaintiff to another department
11) after she left work in September, 2002, her wage continuation benefits were withheld.

The lost use of wages for a period of time is by itself, an economic injury that can qualify as a tangible employment action. Jin 310 F.3d at 100.; Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223-224(2d Cir. 2001)(employee established adverse employment action for ADA retaliation claim by showing she was suspended without pay for one week, even though she was later reimbursed.) In this case, plaintiff lost approximately two months differential in pay when defendant failed to promote her at the time the new Vice Presidents came on board. She further lost the use of her wage continuation benefits for several weeks after she left work in September, 2002.

The quantity and quality of the adverse actions taken against plaintiff are sufficient to satisfy this element of her claim.

### 4. Causal Connection

Plaintiff has also met the causal connection requirement in establishing a prima facie case of retaliation. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence retaliatory animus." Mandell v. The County of Suffolk and Gallagher, 316 F.3d 368 (2d Cir. 2003).

In this case, plaintiff's protected activities preceded the alleged adverse

33

employment actions. Given the limited burden a plaintiff must meet to establish a prima facie case, this alone is sufficient to demonstrate a causal connection. See Raniola v. Bratton, 243 F.3d 610, 624 (2d Cir. 2001) (explaining that the plaintiff's burden in establishing a prima facie case is a "light one usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement").

In this case, plaintiff claims that defendant immediately retaliated against her following her complaint and continued to retaliate even after she left work in September, 2002. It is well settled that proof of the causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action. Manoharan v. Columbia University College of Physicians & Surgeons, 842 F.2d 590, 593 (2d Cir. 1988) ; Davis v. State Univ. of N.Y., 802 F.2d 638, 642 (2d Cir. 1986). At the summary judgment stage, temporal proximity is sufficient to create a question of fact as to causation.

### 5. Evidence of Pretext

Despite defendant's contention that the higher salaries of the three new Vice President's were based on their previous salaries or superior experience, the evidence is in dispute. Scott Roe's application of employment shows that he was earning $100,000 at his previous employer, less than the plaintiff was earning at ANAC when Roe was hired. As for Duncan and Alexander, the defendant makes conclusory statements about their prior salaries that are not supported by the evidence. (Def. Exh. Exh. G) Based on AAR's own marketing materials, plaintiff had the most experience, and arguably superior experience, and she had been at ANAC for over a year (16

34

months). Given plaintiff's previous salary, once the cost of living in a particular geographic area is considered, a jury could dismiss as pretextual defendant's proffered reasons for the difference in salary. It is undisputed that the jobs to be done by all the Vice Presidents were identical.

Defendant's contention that the plaintiff's position was unchanged by the restructuring is further undermined by the fact that defendants never assigned anyone to replace her following her departure in 2002. A reasonable juror might conclude that if plaintiff had retained any significant responsibilities following the restructuring of the department, a replacement for plaintiff would have been hired.

The assignment of plaintiff to the Southeast, when it is undisputed that the plan prior to plaintiff's complaint was to hire people who lived in their territories, is also evidence of pretext. A jury could conclude that the decision to hire someone in the Northeast when plaintiff was already living there, which would force plaintiff to either move or have to travel, contrary to the plan in place prior to her complaint, is a pretext for retaliation.

The failure of the defendants to make an exception to the alleged policy of giving promotions only in April raises a genuine issue of material fact which is in dispute. The company had made exceptions on other occasions, arguably under less compelling circumstances, and plaintiff was only asking for the title, not necessarily the raise. A jury could conclude that the decision not to do so in this case was due, at least in part, to retaliation.

Defendant refused plaintiff's request for a transfer to another department

35

because she believed Byler could not work with her. Defendants have not come forward with a legitimate business reason for their failure to even consider such a move.

Finally, defendant is subtly raising the issue of plaintiff's performance as their so called legitimate business reason for refusing her promotion to John Bennett's position, and for paying her a lesser salary than her peers doing the same job, suggesting for example, that she did not get along with the underwriters and had rarely "closed deals." First, it should be noted that there is evidence that the underwriting department was understaffed during the period in question, and that the company did not have the "issuing paper" to close deals. Second, considering Byler's extremely positive comments regarding plaintiff's performance prior to her complaint and the complete absence of any negative comments or documentation regarding her performance prior to her complaint, a jury could conclude that raising these issues at this juncture is a pretext for discrimination.

The cumulative impact of the issues in dispute as set forth by plaintiff permits an inference of retaliation, and thus plaintiff has established a triable issue of fact in response to defendant's proffered explanation.

**C.    EQUAL PAY ACT**

To prove liability under the Equal Pay Act, "a plaintiff must show that (i) the employer pays different wages to employees of the opposite sex; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions." Lavin-McEleney v. Marist College, 239 F.3d 476, 480 (2d Cir. 2001). With respect to the second prong, the plaintiff "need

36

not demonstrate that her job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort and responsibility." *Id*. In this case, it is undisputed that the four Vice Presidents of Marketing were performing the same job.

Essentially, the EPA promotes equal pay for equal work regardless of gender. There are certain statutory affirmative defenses expressly permitted to an employer. An employer is permitted to pay different wages to its male and female employees when the wage differentials are the product of "(i) a merit system; (ii) a seniority system; (iii) a system which measures earnings by quantity or quality of production; (iv) a differential based on any other factor other than sex." 29 U.S.C. §206(d). Further an employer must prove that a factor with respect to the fourth affirmative defense has a legitimate business purpose and is not a mere pretext for discrimination. See <u>Aldrich v. Randolph Central School District</u>, 963 F.2d 520, 526-527 (2d Cir. 1992). The appropriate inquiry to determine if the factor put forward is a pretext is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices." *Id*. The burden of establishing a defense is "a heavy one" because the statutory exemptions are "narrowly construed". <u>Rydukowski v. Port Authority</u>, 203 F.3d 135, 143 (2d Cir. 2000).

Defendants claim that the differences in salary were justified by the greater skill, experience and salary history of the male comparators, defenses that fall under the fourth category, namely, a differential based on any other factor other than sex.

After her promotion in April, 2002, plaintiff was being paid $118,000 for doing the

37

same job as the other three Vice Presidents. From January, 2002 through March, 2002, she was being paid $103,000 for doing the same job. Although Duncan was offered an annual salary of $125,000, $5,000 less than the males, who were paid $130,000, defendants argue that the fact that they paid a female Vice President "the same rate of pay" as the males wholly contradicts any inference that gender played a role. Clearly this is not dispositive. Employer's cannot discriminate against some members of a protected class merely because they favorably treat other members of that class. Connecticut v. Teal, 457 U.S. 440, 445 (1982).

Defendants own marketing materials state that Ms. Bolick had twenty years of experience, Ms. Duncan had eighteen years, Mr. Roe had fourteen years, and Mr. Alexander had ten years. With respect to salary history, the evidence only shows that Mr. Roe earned $100,000 at his prior employment. There is no admissible evidence to suggest what Duncan and Alexander made at their prior employment. As to the skills of the males as compared to plaintiff's, plaintiff had been at ANAC for well over a year, and Byler was pleased with her performance opining that she had embraced the marketing role, was creating strong relationships, and had a good underwriting background, was well organized, and was instrumental in developing enhancements for AAR's marketing materials. There is no evidence to suggest that her skills were deficient in any way. Moreover, the males were new hires and it strains credulity to suggest that Byler believed their skills were superior to Bolick's based on their resume or interviews. In short, a jury could reasonably conclude that the legitimate business

38

reason given for the difference in salary was a pretext for discrimination. [3]

## D. COMMON LAW CLAIMS RELATING TO BONUS

### 1. Implied Contract

Plaintiff claims that there existed an implied contract for payment of a bonus as outlined in the terms of her offer letter and attached Remuneration Approach. Plaintiff relied on the representations by remaining in the employ of defendant ANAC. Plaintiff avers that the language is clear that if AAR met its goals in 2001 she is entitled to a bonus. It is undisputed that AAR met its goals. Levine v. Massey, 232 Conn. 272, 277-278(1995) If the language is deemed ambiguous by the court, summary judgment is inappropriate. Southeastern Conn. Regional Resources Recovery Authority v. DPUC, 244 Conn. 280, 291 (1998).

Plaintiff claims that the same facts that support her implied contract claim, support her claim for negligent misrepresentation. D'Ullise-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206 (1987). The representation alleged are those within the offer letter and attached Remuneration Approach.

Because there are genuine issues of material fact in dispute, summary judgment on plaintiff's common law claims relating to the failure of defendant to pay a bonus in

---

[3]In addition to the sign on bonus, which was only, paid to the males, the males were designated as "Key Employees" in their offer letters and were offered equity in the company at the time they were hired. The females, Ms. Bolick and Ms. Duncan, were not offered equity until later in their employment. Byler testified that the criteria for offering somebody equity at the time they were hired was that they would be a "performer" and would have an "important impact for Alea". Defendant paid Ms. Bolick's and Ms. Duncan's moving expenses. At best this cancels out the inequity with respect to the sign on bonus, and, in any case, does not affect salary going forward.

39

2001 should be denied.

### E.   LIABILITY OF AGH

Liability may attach to an affiliated corporation if the plaintiff can demonstrate that there are "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." Herman v. Blockbuster Entertainment Group, 18 F.Supp. 2d 304 (S.D.N.Y. 1998).

The Second Circuit has established a four part test indicating what a plaintiff must demonstrate in order to establish that corporations are related in such a manner:(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." Cook v. Arrowsmith Shelburne, 69 F.3d 1235, 1240 (2d Cir. 1995).   An employee does not need to show that each factor exists in order to establish an integrated enterprise nor is there any one factor that must be shown. Meng v. Ipanema Shoe Corp. 73 F.Supp.2d 392, 402 (S.D.N.Y. 1996) The critical question is "what entity made the final decisions regarding employment matters related to the person claiming discrimination?" 69 F.3d at 1240.

In this case, plaintiff understood that Dennis Purkiss, CEO of AGH, made the final decisions regarding employment matters. This understanding was based, at least in part, on discussions plaintiff had with Marti Lametta, VP and Director of Human Resources for ANAC. Mr. Purkiss testified that he was a common manager as to the

40

various operating companies and franchises, and that most other functions, including human resources, are centralized, including the promulgation of personnel policies.

There is sufficient evidence from which a jury could find that AGH is an affiliated corporation jointly responsible for the acts of ANAC.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Defendants' Motion for Summary Judgment be denied.

THE PLAINTIFF, LEIGH BOLICK

*Barbara E. Gardner*
Barbara E. Gardner
CT07623
843 Main St., Suite 1-4
Manchester, CT 06040
(860)643-5543
(860)645-9554(fax)
Bg@bgardnerlaw.com

41

## CERTIFICATION

THIS WILL CERTIFY that a copy of the foregoing was mailed, postage prepaid, to the following counsel of record on this 3rd day of March, 2004:

Mary A. Gambardella
Epstein Becker & Green, P.C.
One Landmark Square, Suite 1800
Stamford, CT 06901-2601

Cindy Schmitt Minniti
ReedSmith LLP
599 Lexington Ave., 29th Floor
New York, NY 10022

_Barbara E. Gardner_
Barbara E. Gardner

42