UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
MAR 26  11 33 AM '04
DISTRICT COURT
NEW HAVEN, CONN.

| | |
|---|---|
| LEIGH BOLICK,<br><br>Plaintiff,<br><br>v.<br><br>ALEA GROUP HOLDING, LTD., ALEA NORTH AMERICA COMPANY, JOHN J. BENNETT and ROBERT D. BYLER,<br><br>Defendants. | DEFENDANT JOHN J. BENNETT'S LOCAL RULE 56(a)1 STATEMENT OF UNDISPUTED FACTS<br><br>CIVIL ACTION NO.<br>3:03 CV 165 (PCD)<br><br>FEBRUARY 12, 2004 |

Defendant John J. Bennett ("Bennett"), by and through his attorneys, Reed Smith LLP, for its statement of undisputed facts pursuant to Local Rule 56(a)1, states the following:

1.   Plaintiff Leigh Bolick ("Plaintiff") is a former employee of the Alea North America Company ("Alea"). See Amended Complaint, dated April 4, 2003 ("Compl.") ¶ 7.

2.   In October 2000 Plaintiff began working for Alea as an Assistant Vice President of Marketing. See id.; Exhibit "A" (Bolick Dep.) at 112[1]; Exhibit "B" (Employment Offer Letter).

3.   At the time she was hired, Plaintiff reported to Bennett, who held the position of Senior Vice President of Marketing. See Compl. ¶ 8.

---

[1] All exhibits are annexed to the Memorandum of Law In Support of Defendant John J. Bennett's Motion for Summary Judgment, dated February 12, 2004, submitted herewith.

4. Bennett reported to Defendant Robert D. Byler, Chief Executive Officer of Alea Alternate Risk ("Byler"). See Compl. ¶ 16.

5. During the interview process, before Plaintiff was hired, she requested a Vice President title rather than Assistant Vice President, but this request was denied. See Exhibit "A" (Bolick Dep.) at 112.

6. At the time Plaintiff was hired, she knew that Alea was a "start-up" company. See id. at 157-158; Exhibit "C" (Byler Dep.) at 26.

7. At the time Plaintiff was hired, she knew Alea would be hiring additional individuals for all positions. See id. at 157-159.

8. Plaintiff's employment offer letter, which Plaintiff read and signed, stated that the only person who could change the terms and conditions of Plaintiff's employment was Dennis Purkiss. See Exhibit "B" (Employment Offer Letter).

9. During the weeks of October 16, 2000 and October 30, 2000, Plaintiff and Bennett went on two business trips together. See Compl. ¶ 10, 12.

10. Plaintiff alleges that during these business trips Bennett made certain allegedly offensive comments. See Compl. ¶ 10-15.

11. On November 6, 2000 Plaintiff complained to Byler about Bennett's behavior during the two October 2000 business trips. See Compl. ¶ 14; Exhibit "C" (Byler Dep.) at 16.

12. Plaintiff's November 2000 complaint to Byler consisted of allegations that Bennett (1) drank too much, (2) inappropriately talked about drug use, (3) stood too close to her, (4) on one occasion, put his arm on her shoulder while walking, (5) reminded her to bring workout clothes and (6) asked Plaintiff whether she had discussed him with her husband. See Compl. ¶ 17; Exhibit "C" (Byler Dep.) at 18-21.

13. Plaintiff requested that Byler not tell Bennett about her complaint. See Exhibit "A" (Bolick Dep.) at 181-182.

14. Byler kept the November 2000 meeting confidential. See Exhibit "C" (Byler Dep.) at 22, 24, 32, 182.

15. Bennett was unaware of Plaintiff's November 2000 complaint to Byler. See Exhibit "D" (Bennett Dep.) at 55.

16. Bennett never made any sexual demands of Plaintiff, nor did he ever say that he wanted to be intimate with Plaintiff. See Exhibit "A" (Bolick Dep.) at 296-297.

17. Plaintiff has no knowledge of Bennett ever doing drugs and Bennett never asked Plaintiff to do drugs with him. See Exhibit "A" at 328, 330.

18. Plaintiff does not recall Bennett saying or doing anything of a sexual nature when he stood "too close" to her. See id. at 320.

19. In August 2001, Bennett recommended Plaintiff for a raise and a promotion to Vice President of Marketing. See Exhibit "D" (Bennett Dep.) at 37.

20.    In April 2002, Plaintiff received a $15,000 raise and the promotion for which Bennett recommended her. See Exhibit "A" (Bolick Dep.) at 558.

21.    Alea has policy of awarding promotions and raises to all employees on April 1st of each year. See Exhibit "G" (Purkiss Dep.) at 34.

21.    After their October 2000 trips, Plaintiff and Bennett did not travel together until December 2001. See Compl. ¶ 18.

22.    During the eleven months Plaintiff and Bennett did not travel together, from October 2000 to December 2001, Plaintiff and Bennett did not work together, traveled on alternate weeks and saw each other only rarely - as little as twice a month. See Exhibit "A" (Bolick Dep.) at 360-362.

23.    In December 2001, Plaintiff interviewed Sandra Duncan, a candidate for a Vice President position. See Exhibit "C" (Byler Dep.) at 185; Exhibit "A" (Bolick Dep.) at 433.

24.    Plaintiff claims that on January 9, 2002, Bennett told her that another Vice President would be hired and that Plaintiff would no longer be his "right hand man." See Compl. ¶ 26.

25.    In January 2002, Sandra Duncan was hired. See Exhibit "C" (Byler Dep.) at 56.

26.    Bennett did not have the authority to alter Plaintiff's job duties. See Exhibit "C" (Byler Dep.) at 211, 222.

4

27.    Bennett never requested or recommended that Byler alter Plaintiff's job duties. See Exhibit "C" (Byler Dep.) at 210-211.

28.    Plaintiff first complained to Human Resources at Alea on January 10, 2002. See Compl. ¶ 24.

29.    Immediately upon receiving Plaintiff's complaint, Alea began an investigation. See Exhibit "E" (Lametta Dep.) at 33.

30.    Neither Bennett nor Plaintiff came to work during the investigation. See Exhibit "C" (Byler Dep.) at 201.

31.    Plaintiff voluntarily stayed home during this investigation because she felt uncomfortable with the situation. See id. at 86-87, 201.

32.    On January 31, 2002, before the investigation was completed, Bennett voluntarily resigned from Alea. See Byler Dep. at 113, 165, 202.

33.    In March 2002 and April 2002, Alea hired two new senior vice presidents, Scott Roe and Jeffrey Alexander. See Exhibit "C" (Byler Dep.) at 56; Exhibit "A" (Bolick Dep.) at 486.

34.    Bennett and Byler have not spoken to each other since Bennett resigned from Alea. See Exhibit "C" (Byler Dep.) at 83.

35.    From the time Plaintiff complained to Human Resources, until her deposition in the instant litigation, Plaintiff had not seen Bennett. See Exhibit "A" (Bolick Dep.) at 594.

36.     Plaintiff admits that Bennett did not retaliate against her after he resigned from Alea. See Exhibit "A" (Bolick Dep.) at 461.

37.     On July 15, 2003, Alea terminated Plaintiff's employment because Plaintiff had been on medical leave since September 16, 2002 and her leave time had expired on January 7, 2003, and because Plaintiff had misrepresented her marital status to obtain group medical and dental coverage for her ex-husband. See Exhibit "F" (Termination Letter).

Respectfully submitted,

*[signature]*

David L. Weissman ct24702
Cindy Schmitt Minniti ct25495
**REEDSMITH LLP**
599 Lexington Avenue, 29th Fl.
New York, NY 10022
P: (212) 521-5436
F: (212) 521-5450
syaklin@reedsmith.com

*Attorneys Pro Hac Vice for*
*Defendant John J. Bennett*

Dated: February 12, 2004
       New York, New York