UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Leigh BOLICK, | : | |
|     Plaintiff | : | |
| | : | |
| vs. | : | Civil No. 3:03cv165 (PCD) |
| | : | |
| ALEA GROUP HOLDINGS, LTD., ALEA NORTH AMERICA COMPANY, John J. BENNETT, and Robert D. BYLER, | : : : | |
|     Defendants | : | September 30, 2005 |

## RULING ON MOTION FOR RECONSIDERATION

Pursuant to D. Conn. L. R. Civ. P. 7(c) Plaintiff moves for reconsideration of the grant of summary judgment in favor of the Defendants on Plaintiff's Title VII hostile environment claims, as to alleged adverse actions under her retaliation claims, and as to certain claims against defendant John Bennett. For the reasons stated herein, Plaintiff's Motion for Reconsideration [Doc. No. 127] is **granted** and the prior ruling is **vacated** in part, **affirmed** in part.

**I.    BACKGROUND**

For the purposes of this ruling, the relevant history of the case is as follows: Plaintiff, Leigh Bolick, filed this action against Alea Group Holdings, Ltd. (hereinafter "Alea"), Alea North America Company (hereinafter "ANAC"), John J. Bennett, and Robert D. Byler for sexual harassment, gender discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000 et seq., (hereinafter "Title VII") and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq. Defendants moved for summary judgment. On March 30, 2005 this Court filed a Ruling on

Defendants' Motion for Summary Judgment [Doc. No. 126] granting summary judgment against Plaintiff with respect to her hostile work environment claim against Defendants Alea, ANAC, and Robert D. Byler, her quid pro quo claim, her common law contract claims, and partially with respect to her retaliation claims.  Plaintiff now seeks reconsideration of that Ruling with respect to Plaintiff's hostile work environment claim against Defendants Alea, ANAC, and Robert D. Byler (specifically, Plaintiff asks this Court to reconsider its decision that there was no tangible employment action and that Defendants met their burden of proof on the affirmative defense to vicarious liability) and with respect to the Court's decisions regarding specific issues raised by her retaliation claims.

## II.     STANDARD OF REVIEW

Reconsideration will generally only be granted when a party can point to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted) (cautioning that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again").  Reconsideration should therefore be granted when a "party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  This Court will not grant a motion to reconsider "where the moving party seeks solely to relitigate an issue already decided," to "plug gaps in an original argument or to argue in the alternative once a decision has been made." Id., Horsehead Res. Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc., 928 F.Supp. 287, 289 (S.D.N.Y. 1996) (citations omitted).  Ultimately,

however, the question is a discretionary one and the court is not limited in its ability to reconsider its own decisions prior to final judgment. See Virgin Atl., 956 F.2d at 1255.

## III. DISCUSSION

### A. Defendants ANAC and Byler's Motions

An employer can be subject to vicarious liability to an employee for a hostile work environment created by a supervisor with authority over the victimized employee. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 766 (1998); Faragher v. Boca Raton, 524 U.S. 775, 807-808 (1998). If the supervisor's behavior results in a "tangible employment action" – such as "discharge, demotion, or undesirable reassignment" – no defense is available and the employer will be held vicariously liable. Ellerth, 524 U.S. at 765. Even in the absence of a tangible employment action, however, the employer will still be held vicariously liable unless it establishes, as an affirmative defense, "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id.

#### 1. Tangible Employment Action

In her Motion for Reconsideration, Plaintiff asks this Court to reconsider its decision that there was no tangible employment action so as to impute liability to the employer. Pl.'s Mem. Supp. Mot. Recons. at 1. Specifically, Plaintiff asks the Court to consider that the alleged negative comments on Plaintiff's performance made by Bennett to Byler constitute a tangible employment action. Id. Moreover, Plaintiff asks the Court to find that there was a connection between Bennett's alleged threats and the alleged tangible employment action instituted by Byler.

3

Id. at 1-2.

Adverse employment actions are not limited to "pecuniary emoluments." Treglia v. Town of Manilus, 313 F.3d 713, 720 (2d Cir. 2002) (quoting Preda v. Nissho Iwai Am. Corp., 128 F.3d 789, 791 (2d Cir. 1997)). Lesser actions such as negative employment evaluation letters, if sufficiently linked to retaliatory animus, may also be considered adverse. See id.

Other courts have held that negative employment recommendations could constitute a tangible employment action. See, e.g., Presley v. Pepperidge Farm, Inc., 356 F.Supp.2d 109, 125 (D.Conn. 2005). In Presley the plaintiff had not been hired for a subsequent job for which her supervisor at Defendant company had provided a negative employment recommendation. The court's finding that the negative employment recommendation could constitute a tangible employment action was based on its finding that a "reasonable juror could then infer that [the prospective employer] did consider the recommendation and that it caused him to decline to hire [the plaintiff]." Id. The Presley court made clear that an unfulfilled threat, by itself, is not sufficient to constitute a tangible employment action. Id.; see also Jin v. Metro. Life Ins. Co., 310 F.3d 84, 93 (2d Cir. 2002) (stating that a threat is not a tangible employment action if the plaintiff is not subjected to further sexual harassment and the supervisor does not follow through with his threat).

In this case, unlike the situation in Presley, the Plaintiff presents no evidence to connect Bennett's alleged threats with any action by Byler or ANAC. Moreover, the "negative comments" made by Bennett that Plaintiff refers to in her Motion for Reconsideration consist solely of one statement made by Bennett to Byler during the course of the investigation into Bennett's conduct ("[Plaintiff] has had difficulty getting along with some underwriters"). Mem.

Supp. Mot. Summ. J., Exh. 12, D0133. Unlike the statement at issue in Presley, where the court emphasized that the Defendant was using his supervisory power to write the recommendation and wield influence, in this case it is clear that Bennett was acting not as a supervisor with authority over Plaintiff, but as the target of an investigation. Plaintiff offers no clear evidence linking this comment with any behavior by Byler or ANAC. See Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 45 (1st Cir. 2003) (affirming summary judgment because "there is absolutely no evidence that anyone other than non-harassers made the decision or that gender discrimination motivated the decision to move her to a new territory"). These reasons, as well as the reasons set forth in this Court's March 30, 2005 Ruling, compel the conclusion that Plaintiff has not met her burden to demonstrate that a question of fact exists regarding the existence of a tangible employment action. Rul. Mot. Summ. J. at 16. Moreover, as stated in the prior Ruling, even if Plaintiff was able to demonstrate a connection, she still generally fails to establish any adverse employment action taken by Byler. Id. at 16, n.4.

        2. Affirmative Defense

Under the analysis set out in Ellerth and Faragher, an employer will be liable, even in the absence of a tangible employment action, unless it establishes "(a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." See Burlington Indus., Inc., 524 U.S. at 765; Faragher, 524 U.S. at 807. For the reasons stated in this Court's March 30, 2005 Ruling, it is clear that Defendant has properly supported its Motion for Summary Judgment regarding the affirmative defense and Plaintiff has failed to meet her burden in opposition. Rul. Mot. Summ. J.

at 19.

### 3. Wage Continuation Benefits

Regarding the wage continuation benefits available to employees under ANAC's long-term disability policy, Plaintiff has alleged that she was initially denied 13 weeks of coverage and told that she was only entitled to six. Bolick Depo. at 576-80. Plaintiff contends that the wages were withheld for "several weeks," but acknowledges that she did receive the wage continuation benefits to which she was entitled after the delay. Id. The Second Circuit has concluded that even if a plaintiff was later reimbursed, suspension without pay for week and the resultant lost use of wages for a time can be sufficient to establish an adverse employment action for a retaliation claim. Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 223-24 (2d Cir. 2001). Viewing the evidence in the light most favorable to the plaintiff, it is clear that she has presented sufficient evidence to establish a prima facie case of retaliation. Plaintiff's complaint to ANAC's Human Resources Department is a protected activity under Title VII. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). Thereafter, Plaintiff took a disability leave and a jury could find that she was subsequently denied the full 13 weeks of wage continuation benefits. Even though she was later reimbursed, a finding that Plaintiff "may have at least suffered the loss of the use of her wages for a time" would be "sufficient to support a jury's finding that she suffered an adverse employment action." Lovejoy, 263 F.3d at 224.

### 4. Timing of Plaintiff's Promotion

For the reasons set forth in this Court's March 30, 2005 Ruling, Plaintiff fails to support her claim of retaliation with respect to the timing of her promotion. Rul. Mot. Summ. J. at 27-28.

  B.  Bennett's Motion

   1.  Adverse Employment Actions

  For the reasons set forth below and in this Court's March 30, 2005 Ruling, Plaintiff fails to show that Bennett's threat was an adverse employment action.  In her Motion for Reconsideration, Plaintiff cites Jin v. Metro. Life Ins. Co., 310 F.3d 84 (2d Cir. 2002) for the proposition that threats may constitute an adverse employment action.  In Jin, however, the Court held only that the *criminal assault* of an employee constituted a tangible employment action.  Id. at 97.  The Court found that a threat is not a tangible employment action if the plaintiff is not subjected to further sexual harassment and the supervisor does not follow through with his threat. Id. at 93; see also Torres v. Pisano, 116 F.3d 625, 639-640 (2d Cir. 1997) (finding that even though Defendants' requests left Plaintiff feeling "frightened" and "intimidated," she did not show, as she must, that she suffered "a materially adverse change in the terms and conditions of employment"); Presley, 356 F.Supp.2d 109, 125 (D.Conn. 2005) (an unfulfilled threat, by itself, is not enough); O'Dwyer v. Snow, 2004 U.S. Dist. LEXIS 3528, 32-33 (S.D.N.Y. 2004) (finding that even though Plaintiff experienced "an unpleasant altercation with her supervisor" when he allegedly jumped across her desk, stretched out his hand toward her, came within two inches of her face and told her to lower her voice, the experience did not rise to the level of a "material adverse change in Plaintiff's working condition" and that "behavior that simply leaves a plaintiff feeling frightened or threatened does not constitute an adverse employment action"); Bennett v. Watson Wyatt & Co., 136 F.Supp.2d 236, 248 (S.D.N.Y. 2001) ("threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions").

   2.  Retaliation Claim

Plaintiff argues that the Court should find that there was sufficient temporal proximity between her complaint to Byler and Bennett's subsequent alleged failure to train in order to establish causation for purposes of her retaliation claim. Pl.'s Mem. Supp. Mot. Recons. at 15-16. In the March 30, 2003 Ruling, this Court declined to consider whether the failure to train rose to the level of an actionable adverse employment action, holding that even if it did, Plaintiff had failed to indicate when the alleged conduct took place and found no basis for assessing whether there was sufficient temporal proximity to establish causation for purposes of the retaliation claim. Rul. Mot. Summ. J. at 40. Thus, even if the temporal proximity is sufficient, Plaintiff has not presented a prima facie case for discriminatory failure to train.

To state a cause of action for discriminatory failure to train, Plaintiff must show: (1) that she is a member of a protected class; (2) that she satisfactorily performed the her duties; (3) that the employer had a policy of providing the allegedly denied training to similarly situated employees; and (4) that the employer denied plaintiff such training under circumstances that give rise to an inference of discrimination. See Lopez v. Metropolitan Life Ins. Co., 930 F.2d 157, 161 (2d Cir. 1991); Ani v. IMI Sys., 98 Civ. 8430, 2002 U.S. Dist. LEXIS 15196, at *14 (S.D.N.Y. August 14, 2002).

In the instant case, Plaintiff claims that in retaliation for her complaint to Byler, Bennett "failed to train" her. As evidence, she alleges that Bennett left her out of two important meetings with Alea contacts that she had asked to attend and that he would later say that "he forgot" to tell her about them. Moreover, Plaintiff alleges that at two conventions that they attended together, Bennett refused to help Plaintiff set up the convention, meet with clients, or introduce her to people. Pl.'s Mem. Opp. Bennett's Mot. Summ. J. at 7; Mem. Supp. Mot. Summ. J., Exh. 2 at

361-65. While Plaintiff alleges that Bennett refused to let her accompany him to meetings, however, Plaintiff also admits that he did take her to "a few." Mem. Supp. Mot. Summ. J., Exh. 2 at 362. Moreover, Plaintiff presents no evidence showing that Bennett's alleged conduct was any different from his pre-complaint behavior – in fact, Plaintiff states in her Motion for Reconsideration that Bennett's failure to train took place between October 2000 and May 2001, thus beginning one month *before* her November 6, 2000 complaint to Byler. See Pl.'s Mem. Supp. Mot. Recons. at 16.

     Plaintiff's claim is troubling because while she does allege that Bennett's "failure to train" occurred in the seven-month period following her complaint to Byler, this was also the period that she had specifically asked not to travel with Bennett. Moreover, Plaintiff has not presented any evidence relating to the third prong of the analysis, namely that the employer had a policy of providing the allegedly denied training to similarly situated employees. The only evidence she presents on the issue is her own deposition testimony stating that Byler had expressed to her that he expected Bennett to "help introduce [Plaintiff] to the people in the industry and . . . bring [Plaintiff] on as the new Alea person . . . and he didn't care to do that." Pl.'s Mot. Recons. at 16; Pl.'s Mem. Opp. Bennett's Mot. Summ. J., Exh. 2 at 361-364. Courts within this circuit have held that a reasonable jury could not conclude that rescheduling meetings, delaying responses to inquiries, and asking a plaintiff to leave a meeting he was not supposed to attend, amount to adverse employment actions. See Lundy v. OOCL, Inc., 1999 U.S. Dist. LEXIS 1077, 1999 WL 58676 *4 (S.D.N.Y. 1999); Meckenberg v. New York City Off-Track Betting, 42 F. Supp. 2d 359, 380 n. 13 (S.D.N.Y. 1999). Though the cases do not address the exact conduct at issue here, it is not clear that there were any acts or omissions that could constitute an

actionable adverse employment action.

Even if Bennett's actions did constitute discriminatory failure to train, Plaintiff must still prove that the adverse employment action was done in retaliation for a protected activity.  To make out a prima facie case of retaliation, Plaintiff must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff, and (3) a casual connection between the protected activity and the adverse employment action.  See Richardson v. New York State Department of Correctional Service, 180 F.3d 426, 443 (2d Cir. 1999).  Plaintiff's act of complaining to Byler was clearly protected, however, she must still prove that Bennett's alleged failure to train harmed or disadvantaged her in some way.  Plaintiff has not presented any evidence, aside from testifying that Bennett would have her "cold-calling" people instead of calling contacts, that shows any tangible harm or disadvantage.

With regard to the third prong, Plaintiff can demonstrate the causal connection by showing temporal proximity between her participation in a protected activity and the employer's adverse actions, although the proximity must be "close."  See Treglia v. Town of Manilus, 313 F.3d 713, 720 (2d Cir. 2002); Cifra v. GE, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time [20 days in this case] by the adverse action." (internal quotation marks omitted)); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (less than two months between protected activity and allegedly adverse action sufficient to establish causation);  Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (only 12 days between protected activity and adverse action was sufficient). Although there is no bright line to define the outer limits beyond which a temporal relationship is too

attenuated, Gorman-Bakos v. Cornell Coop. Extension of Schenectady County, 252 F.3d 545, 554 (2d Cir. 2001), courts are less likely to find causation if there is a "long hiatus between the protected activity and the [adverse action]." Honey v. County of Rockland, 200 F. Supp. 2d 311, 321 (S.D.N.Y.2002) (finding no casual connection because a year had passed between Plaintiff's protected activity and the alleged adverse employment action). Claims of retaliation are routinely dismissed when as few as three months elapse between the protected activity and the alleged act of retaliation. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (citing cases where three- or four-month time spans were insufficient to make a prima facie case of causation). Particularly relevant for this case, "where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise," Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 95 (2d Cir. 2002) (discussing a situation in which Defendant had begun reducing Plaintiff's responsibilities a full five months before Plaintiff filed EEOC charges). Although Plaintiff alleges that the actions occurred in the "seven month period" following Plaintiff's complaint, Plaintiff has still not provided any specific dates (Plaintiff alleges only that the failure to train occurred between October 2000 and May 2001, beginning one month before Plaintiff's complaint and continuing for seven months after). In the instant case, the question of temporal proximity is a close one, however, where there is no actionable adverse employment action, as here, the court need not reach the issue of causation.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Reconsideration [Doc. No. 127] is **granted**. The Court examined the merits of her claims and the prior ruling is **vacated** in part,

**affirmed** in part.

SO ORDERED.

Dated at New Haven, Connecticut, September ___, 2005.

/s/_____

Peter C. Dorsey, U.S. District Judge

United States District Court